IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| STONE ENERGY CORPORATION, *et al.*,[1] | § | CASE NO. 16-36390 (MI) |
| | § | (Joint Administration Pending) |
| Debtors. | § | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING
COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT AND
(B) CONFIRMATION OF PREPACKAGED PLAN; (II) FIXING DEADLINE TO
OBJECT TO DISCLOSURE STATEMENT AND PREPACKAGED PLAN;
(III) APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND
MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING, AND
OBJECTION DEADLINE; (IV) CONDITIONALLY (A) DIRECTING THE UNITED
STATES TRUSTEE NOT TO CONVENE SECTION 341 MEETING OF CREDITORS
AND (B) WAIVING REQUIREMENT OF FILING STATEMENTS OF FINANCIAL
AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES; (V) APPROVING
PROCEDURES FOR EQUITY HOLDERS TO OPT OUT OF RELEASES; (VI)
APPROVING NOTICE AND PROCEDURES FOR THE ASSUMPTION OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (VII) GRANTING
RELATED RELIEF**

> THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER FOR DECEMBER 16, 2016, AT 1:30 PM (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1] The Debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Stone Energy Corporation (5413); Stone Energy Holding, L.L.C. (3151); and Stone Energy Offshore, L.L.C. (8062). The above-captioned Debtors' mailing address is 625 E. Kaliste Saloom Road, Lafayette, Louisiana 70508.

The debtors and debtors in possession in the above-captioned cases (together, the "Debtors") hereby respectfully represent as follows in support of this motion (this "Motion"):

## RELIEF REQUESTED

1.      By this Motion, pursuant to sections 105(a), 341, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 1007(b), 2002, 2003, 3016, 3017, 3018, 3020, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), the Debtors respectfully request entry of an order:

> i.      scheduling a combined hearing (the "Combined Hearing") to (a) approve the *Proposed Disclosure Statement for Joint Prepackaged Plan of Reorganization of Stone Energy Corporation and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement")[2] and (b) consider confirmation of the *First Amended Joint Prepackaged Plan of Reorganization of Stone Energy Corporation and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "Plan");[3]

> ii.     establishing the deadline (the "Objection Deadline") to object to the adequacy of the Disclosure Statement and/or confirmation of the Plan;

> iii.    approving the Solicitation Procedures (as defined herein) with respect to the Plan, including the forms of Ballots and Equity Release Opt Out (each as defined herein);

> iv.     approving the form and manner of the notice of the commencement of the Debtors' Chapter 11 Cases, the Combined Hearing and the Objection Deadline;

> v.      so long as the Plan is confirmed in accordance with the terms of the Restructuring Support Agreement (as defined below), which requires confirmation on or before the date that is seventy-five (75) days after the Petition Date, (a) directing the Office of the United States Trustee for the

---

[2] The Disclosure Statement and the Plan have been filed contemporaneously with this Motion. A copy of the Disclosure Statement is attached hereto as Exhibit C and a copy of the Plan is attached hereto as Exhibit D.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Southern District of Texas (the "U.S. Trustee") not to convene an initial meeting of creditors under section 341(a) of the Bankruptcy Code (the "341 Meeting"), and (b) waiving the requirement that the Debtors file statements of financial affairs ("SOFAs"), and schedules of assets and liabilities ("Schedules");

    vi.    approving the procedures for providing holders of Stone Equity Interests the opportunity to opt out of the voluntary releases set forth in Article X.C of the Plan (an "Equity Release Opt Out") and establishing the deadline by which the Equity Release Opt Out must be submitted (the "Equity Opt Out Deadline"); and

    vii.    approving the form of the Assumption Notices (as defined below), substantially in the forms attached as Exhibit 3 and Exhibit 4 to the Scheduling Order and authorizing and approving procedures for the assumption of executory contracts and unexpired leases (the "Contract Assumption Procedures").

    viii.    granting related relief.

2.    A proposed form of order granting the relief requested herein is attached hereto as Exhibit A (the "Scheduling Order").

3.    Below is a table highlighting the key dates relevant to the Solicitation Procedures and setting forth the Debtors' proposed dates for the mailing of the Combined Notice (as defined herein), the Objection Deadline, and the Combined Hearing.

| Event | Date/Deadline[4] | Days Before/After the Petition Date |
|---|---|---|
| Voting Record Date | November 9, 2016 | 35 days before the Petition Date |
| Commencement of Solicitation | November 17, 2016 | 27 days before the Petition Date |
| Voting Deadline | December 16, 2016, at 5:00 p.m. (Prevailing Central Time) | 2 days after the Petition Date and 28 days after the commencement of solicitation |
| Publication Notice Deadline | January 18, 2017 | 35 days after the Petition Date |
| Plan Supplement Filing Deadline[5] | January 19, 2017, at 5:00 p.m. (Prevailing Central Time) | 36 days after the Petition Date |

---

[4] The Dates/Deadlines are calculated assuming a date of February 15, 2017 for the Combined Hearing.

[5] Under the Plan, "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be Filed on notice to parties-in-interest, including, but not limited to, the following: (i) the amended and restated certificate of incorporation and amended and restated by-laws of Reorganized Stone; (ii) the

| Event | Date/Deadline[4] | Days Before/After the Petition Date |
|---|---|---|
| Confirmation Order Filing Deadline | January 19, 2017, at 5:00 p.m. (Prevailing Central Time) | 36 days after the Petition Date |
| Objection Deadline | January 23, 2017, at 5:00 p.m. (Prevailing Central Time) (if hand-delivered to the Clerk of Court) | 40 days after the Petition Date |
| | January 26, 2017, at 5:00 p.m. (Prevailing Central Time) (if filed electronically) | 43 days after the Petition Date |
| Reply Deadline | February 9, 2017, at 2:00 p.m. (Prevailing Central Time) | 57 days after the Petition Date |
| Equity Opt Out Deadline[6] | February 13, 2017, at 5:00 p.m. (Prevailing Central Time) | 61 days after the Petition Date |
| Combined Hearing | February 15, 2017 | 63 days after the Petition Date |

4.      Also, summarized in the table below are the attachments and exhibits cited throughout this Motion:

| Pleading | Exhibit |
|---|---|
| Scheduling Order | Exhibit A to this Motion |
| Combined Notice | Exhibit 1 to the Scheduling Order |
| Class 5 Notice of Non-Voting Status | Exhibit 2 to the Scheduling Order |
| Assumption Notice | Exhibit 3 to Scheduling Order |
| Ballots | |
|     Form of Ballot for Prepetition Banks Claims | Exhibit B-1 to this Motion |
|     Form of Master Ballot for Prepetition Notes Claims | Exhibit B-2 to this Motion |
|     Form of Beneficial Ballot for Prepetition Notes Claims | Exhibit B-3 to this Motion |
| Disclosure Statement | Exhibit C |
| Plan | Exhibit D |

---

Amended Credit Agreement (if any); (iii) the New Indenture; (iv) the New Warrant Agreement; (v) the identity of the members of the Reorganized  Board; (vi) the Schedule of Rejected Executory Contracts and Unexpired Leases; (vii) the Registration Rights Agreement; (viii) the Stockholders Agreement (if any) or a notice that the Required Consenting Noteholders determined that a Stockholders Agreement would not be required; (ix) amendments or modifications (if any) to Schedule B to the Restructuring Term Sheet; and (x) a schedule of the Employment Agreements and Severance Agreements.  The Debtors shall file forms of the materials comprising the Plan Supplement no later than the Plan Supplement Filing Date.  Under the Plan, "Plan Supplement Filing Date" means the date that is five (5) days prior to the deadline to object to the confirmation of the Plan.

[6] Under the Plan, the Equity Opt Out Deadline is 5:00 p.m. (prevailing Central Time) on the date that is two (2) Business Days prior to the Confirmation Hearing.

US-DOCS\71510109.18

## JURISDICTION

5.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## EMERGENCY CONSIDERATION

6.     In accordance with Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Immediate and irreparable harm would result if the relief requested herein is not granted.  Specifically, if the solicitation that began pre-petition is disrupted it would waste valuable estate resources and endanger the Debtors' efforts to reorganize and maximize the value of their assets through these chapter 11 cases.  The Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## BACKGROUND

7.     On the date hereof (the "Petition Date"), the Debtors commenced the Chapter 11 Cases.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Kenneth H. Beer, Executive Vice President and Chief Financial Officer of Stone Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions*, filed with the Court concurrently herewith (the "Beer Declaration").

5

8.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108.  As of the date hereof, no trustee or examiner has been requested in the Chapter 11 Cases, and no committees has been appointed.

**A.      The Plan and the Restructuring Support Agreement**

9.      In March 2016, the Debtors engaged restructuring professionals to assist them in developing and implementing a comprehensive restructuring plan.  The Debtors engaged in negotiations with their secured lenders commencing almost immediately thereafter.   The negotiations with the secured lenders resulted in an amendment to the Debtors' secured credit agreement in June 2016, which, among other things, granted a security interest on the Debtors' cash, permitted the Debtors to incur second-lien indebtedness to refinance the notes, increased the borrowing base, and provided for a moratorium on redetermination of the borrowing base until January 15, 2017, other than an automatic reduction upon the sale of certain of the Debtors' properties.  The Debtors were unable to refinance the notes with second-lien indebtedness and began negotiations with the Consenting Noteholders (as defined below) on a comprehensive restructuring commencing in August 2016.  The Debtors reached agreement with the Consenting Noteholders on October 20, 2016, and began documentation of a plan of reorganization, commencing Solicitation of the same on November 17, 2016 (the "Original Plan").

10.      Shortly thereafter, following renewed negotiations with the Consenting Banks, the Debtors, the Consenting Noteholders and the Consenting Banks agreed on a modified version of the Restructuring Support Agreement and Plan, acceptable to all of the foregoing parties.  These negotiations culminated in the Restructuring Support Agreement and the amended Plan in December 2016.

11.     Contemporaneously with this Motion, the Debtors have filed the Plan, the solicitation of which commenced prior to the filing of these Chapter 11 Cases.  The Plan will enable the Debtors to continue to operate their business while substantially de-levering their balance sheet.  The Plan provides for the reduction of approximately $1.2 billion of the Debtors' existing net debt and approximately $46 million of the Debtors' annual cash interest expense.

12.     In addition, the Debtors have filed contemporaneously with this Motion and the Plan that certain Amended and Restated Restructuring Support Agreement, dated as of the date hereof (together with all exhibits and attachments thereto, the "<u>Restructuring Support Agreement</u>") among:  (a) certain financial institutions party to the Fourth Amended and Restated Credit Agreement dated as of June 24, 2014 (as amended, restated, modified, supplemented or replaced from time to time, the "<u>Prepetition Credit Agreement</u>") among the Debtors, such financial institutions as lenders thereto (the "<u>Banks</u>"), Bank of America, N.A., as administrative agent (in such capacity, the "<u>Bank Agent</u>", and collectively, with any Bank that may become a party in accordance with Section 13 and 34 of the Restructuring Support Agreement, the "<u>Consenting Banks</u>") and (b) certain holders of notes issued pursuant:  (i) to the Indenture dated as of March 6, 2012 (as amended, restated, modified, supplemented or replaced from time to time, the "<u>Convertible Indenture</u>") among Stone, as issuer, Stone Energy Offshore, L.L.C. ("<u>Stone Offshore</u>"), as subsidiary guarantor, and The Bank of New York Mellon Trust Company, N.A., as trustee, and (ii) to the Second Supplemental Indenture dated as of November 8, 2012 to Senior Indenture dated as of January 26, 2010 (as amended, restated, modified, supplemented or replaced from time to time, the "<u>Senior Indenture</u>" and, together with the Convertible Indenture, the "<u>Indentures</u>") among Stone, as issuer, Stone Offshore, as subsidiary guarantor, and The Bank of New York Mellon Trust Company, N.A., as trustee (such holders, the "<u>Consenting</u>

Noteholders" and, together with the Debtors and the Consenting Banks, the "Restructuring Support Parties").   As noted above, the Consenting Noteholders hold 79.7% of the $1,075,000,000 aggregate principal amount of claims held by all noteholders under the Indentures and notes issued thereunder (the aggregate claims of all noteholders, the "Prepetition Notes Claims") and the Consenting Banks hold an aggregate principal amount of approximately $341,500,000 under the Prepetition Credit Agreement (the "Prepetition Banks Claims").

13.     The Debtors expect that the holders of Class 3 Prepetition Notes Claims and the Class 2 Prepetition Banks Claims will overwhelmingly vote in favor of the Plan.  Pursuant to the Plan, the Debtors are proposing a restructuring that, among other things, provides the following:

- The Consenting Banks will receive on account of the Prepetition Banks Claims held by such Holders, including obligations relating to issued but undrawn letters of credit under the Prepetition Credit Agreement, (i) their respective Pro Rata share of commitments, and obligations owing to such Holders with respect to outstanding loans, under the Amended Credit Agreement and (ii) their respective Pro Rata share of Prepetition Banks Cash as a partial repayment of such outstanding loans subject to re-borrowing to the extent permitted and pursuant to the terms of the Amended Credit Agreement.  Holders of Prepetition Banks Claims (other than the Consenting Banks) will have the option to receive either (x) the same treatment as the Consenting Banks or (y) their respective Pro Rata share of the obligations owing to such Holders with respect to the New Senior Secured Term Loans, *provided* that the obligations owing to such Holders of Prepetition Banks Claims with respect to issued but undrawn letters of credit under the Prepetition Credit Agreement will remain outstanding and be cash collateralized in an amount equal to 103% of the face amount thereof.

- Holders of the Prepetition Notes Claims in an aggregate principal amount of approximately $1,075,000,000 will receive their respective pro rata shares of (i) the Prepetition Notes Cash, (ii) the New Secured Notes, and (iii) the number of shares of New Common Stock constituting ninety-six percent (96%) of the shares of New Common Stock to be issued and outstanding pursuant to the Plan on the Effective Date, prior to dilution for the Management Equity Incentive Program and the New Warrants.

- The Debtors' trade and other general unsecured creditors (other than the holders of the Prepetition Notes Claims) will be paid in full, in the ordinary course of business, to the extent their claims are undisputed; and

- Stone Equity Interests will be deemed canceled and will be of no further force or effect, whether surrendered for cancellation or otherwise.  Holders of Stone Equity Interests that do not submit an Equity Release Opt Out prior to the Equity Opt Out Deadline will receive, in satisfaction of such interests, their respective pro rata shares of (i) approximately 4% of the New Common Stock and (ii) the New Warrants.  However, holders of Stone Equity Interests that do submit an Equity Release Opt Out prior to the Equity Opt Out Deadline will receive no distribution on account of such interests, and the shares of New Common Stock and New Warrants that would otherwise have been distributed to such holder(s) will be distributed, pro rata, to holders of Stone Equity Interests that did not submit an Equity Release Opt Out prior to the Equity Opt Out Deadline.

### B.   Contract Assumption Procedures

14.   The Plan also contemplates that the Debtors will assume certain executory contracts and unexpired leases.  The Debtors request approval of the Assumption Notices, substantially in the forms attached to the Scheduling Order as Exhibit 3 and Exhibit 4.  The Debtors also seek authority to assume executory contracts and unexpired leases in accordance with the Contract Assumption Procedures.  The Contract Assumption Procedures[7] are as follows:

- Within fourteen (14) calendar days after the Petition Date (the "Assumption Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") either the plan assumption notice, if a contract may be assumed by the Debtors

---

[7] While the Debtors are seeking approval of the form of both the Plan Assumption Notice and the Sale Assumption Notice so as to deliver notice of potential contract assumptions as quickly and efficiently as possible, the Debtors are seeking approval of the Contract Assumption Procedures only as they pertain to the Plan Assumption Notice. The Debtors are seeking separate approval of contract assumption procedures as they pertain to the Sale Assumption Notice in the *Debtors' Motion For Entry Of An Order Approving (I) (A) Assumption Of Purchase And Sale Agreement, (B) Break-Up Fee And Expense Reimbursement, (C) Form And Manner Of Notice Of The Sale Hearing And Assumption Procedures, And (D) Solely In The Event An Auction Process Is Required, (I) The Purchase And Sale Agreement As The Stalking Horse Bid And (Ii) Bidding Procedures; (II) (A) The Sale Of Certain Assets Of The Debtors Located In Appalachia Free And Clear Of All Claims, Liens, Liabilities, Rights, Interests And Encumbrances Except For Permitted Title Encumbrances, And (B) The Debtors Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (III) Related Relief* filed concurrently herewith.

US-DOCS\71510109.18

pursuant to the Plan (attached as Exhibit 3 to the Scheduling Order, the "Plan Assumption Notice"), or the sale assumption notice, if the contract may be assumed and assigned pursuant to the Appalachia Sale Agreement (as defined in the Plan) (attached as Exhibit 4 to the Scheduling Order, the "Sale Assumption Notice") (collectively, the "Assumption Notices").

- The Assumption Notices shall include, without limitation, the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each potentially assumed executory contract or unexpired lease (the "Assumed Contracts"). If a Counterparty objects to the Cure Amount or to a lack of adequate assurance of future performance, the Counterparty must file with the Court and serve on the Contract Objection Notice Parties (as defined below) a written objection (a "Contract Objection").

- Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules; (iii) be filed with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, on or before 5:00 p.m. (prevailing Central Time) on January 24, 2017 (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Contract Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the applicable Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

- If, after the Assumption Notice Deadline, additional executory contracts or unexpired leases of the Debtors are determined to be Assumed Contracts, as soon as practicable thereafter and in no event less than one (1) business day before the date of the Confirmation Hearing, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline in the event that such Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, (b) two (2) days prior to the Confirmation Hearing in the event that such Assumption Notice was filed and served at least seven (7) days prior to the commencement of the Confirmation Hearing, and (c) two (2) hours prior to the commencement of the Confirmation Hearing in the event that such Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Confirmation Hearing.

- If, after the Contract Objection Deadline, additional executory contracts or unexpired leases of the Debtors are determined to be Assumed Contracts, as soon as practicable thereafter and in no event less than one (1) business day before the date of the Confirmation Hearing, the Debtors shall file with the Court and serve,

US-DOCS\71510109.18

by overnight delivery, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) two (2) days prior to the Confirmation Hearing in the event that such Assumption Notice was filed and served at least seven (7) days prior to the commencement of the Confirmation Hearing and (b) two (2) hours prior to the commencement of the Confirmation Hearing in the event that such Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Confirmation Hearing.

- The "Contract Objection Notice Parties" are as follows:  (i) counsel to the Debtors:  Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 (Attn: Caroline A. Reckler, Esq. and Matthew L. Warren, Esq.); (ii) counsel for the Bank Agent:  O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: George Davis, Esq.); and (iii) counsel for the ad hoc group of holders of Convertible Notes and Senior Notes:  Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036 (Attn: Michael S. Stamer, Esq. and Meredith A. Lahaie, Esq.).

- If no Contract Objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Debtors, and be forever barred from asserting any objection with regard to such assumption (including, without limitation, any payment or other obligation in connection with the assumption or with respect to adequate assurance of future performance); (ii) any and all defaults under the Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Cure Amount set forth in the Assumption Notice for such Assumed Contract; and (iii) the Cure Amount set forth in the Assumption Notice for such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors and their estates, the Reorganized Debtors or the property of any of them, that existed prior to the entry of the order approving the assumption of the Assumed Contract.

- To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Confirmation Hearing, including, without limitation, any dispute with respect to the cure amount or any other payment obligation required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Confirmation Hearing or at such other date and time as may be fixed by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Assumed Contract may be assumed by the Debtors, with the consent of the Required Consenting Noteholders, provided that the cure amount the

Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

15.     Any party failing to timely file a Contract Objection with respect to the assumption of any Assumed Contract or related cure amount specified on an Assumption Notice will be barred from objecting thereto, including with regards to any payment or other obligation in connection with the assumption or by asserting any additional cure or other default amounts against the Debtors or any of the Debtors' estates and shall be deemed to consent to the assumption of such Assumed Contract therewith.

## BASIS FOR RELIEF

### A.     Scheduling a Combined Hearing

16.     The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement and the Plan.  In order to meet the timeline set forth in the Restructuring Support Agreement, an order confirming the Plan must be entered no later than seventy-five (75) days after the Disclosure Statement and the Plan are filed.  The Debtors request that the Combined Hearing be held, subject to the Court's schedule, on February 15, 2017 (the "Combined Hearing Date").  This request is consistent with the practice for prepackaged cases in this district, applicable statutes and rules, and will facilitate an expeditious reorganization on a schedule consistent with the dates set forth in the Restructuring Support Agreement.  The Debtors further request that the Scheduling Order provide that the Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and that notice of such adjourned date(s) will be available on the electronic case filing docket.

17.     Bankruptcy Rules 2002(b) and 3017(a) require that twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1).   Section 1128(a) of the Bankruptcy Code provides, "[a]fter notice, the court shall hold a hearing on confirmation of a plan."   11 U.S.C. § 1128(a).   In addition, Bankruptcy Rule 3017(c) provides, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."   Fed. R. Bankr. P. 3017(c).  Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of the related plan. 11 U.S.C. § 105(d)(2)(B)(vi).

18.     The most sensitive and difficult task required to effectuate a successful reorganization—the negotiation of a consensual agreement with the Debtors' largest creditor constituencies —has already been concluded in advance of the Petition Date.  Likewise, the most critical and complex task required to effectuate a successful reorganization—the negotiation, formulation and solicitation of a chapter 11 plan of reorganization—has already been accomplished.  Accordingly, a Combined Hearing in these Chapter 11 Cases would promote judicial economy and would allow the Debtors to expeditiously effectuate their restructuring and preserve value.  The adverse effects of the Chapter 11 Cases upon the Debtors' businesses and going-concern value will be minimized, and the benefit to creditors maximized, through prompt distributions to holders of claims against, and interests in, the Debtors.  Likewise, an expeditious restructuring will serve to minimize administrative expenses of the estates.  Such benefits are the hallmarks of a prepackaged plan of reorganization.  In addition to the reasons set forth above, it

is appropriate to enter the Scheduling Order at this time so that parties in interest may be informed as promptly as possible of the anticipated schedule of events for confirmation of the Plan.

19.     The proposed schedule affords creditors, interest holders and all other parties in interest ample notice of these Chapter 11 Cases and the Combined Hearing.  Specifically, the proposed schedule affords more than thirty (30) days after notice of the Confirmation Hearing for parties to evaluate their rights in respect of the Plan prior to the proposed Combined Hearing thereon and, therefore, no party in interest will be prejudiced by the requested relief.

20.     Therefore, the Debtors respectfully request entry of the Scheduling Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting February 15, 2017 as the date for the Combined Hearing.

**B.      Approval of the Disclosure Statement**

21.     At the Combined Hearing, the Debtors will seek approval of the Disclosure Statement.  Under Bankruptcy Code section 1125, a plan proponent must provide holders of impaired claims with "adequate information" regarding a debtor's proposed plan of reorganization, which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

22.     Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

14

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.R. Rep. 95-595, at 409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6365. See also Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988) (opining that what constitutes adequate information is "subjective," "made on a case-by-case basis," and "largely in the discretion of the bankruptcy court"); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case").

23. The Disclosure Statement is extensive and comprehensive. It contains descriptions of, among other things: (i) the Plan; (ii) the operation of the Debtors' businesses; (iii) key events leading to the commencement of these Chapter 11 Cases; (iv) anticipated events during the Chapter 11 Cases; (v) financial information, financial projections and valuations that would be relevant to creditors' determinations of whether to accept or reject the Plan; (vi) a liquidation analysis setting forth the estimated return that holders of claims and interests would receive in a hypothetical chapter 7 liquidation; (vii) risk factors affecting the Plan; and (viii) federal tax law consequences of the Plan.

24. Based on the foregoing, the Debtors will request at the Combined Hearing that this Court approve the Disclosure Statement as meeting the requirements for "adequate information" under Bankruptcy Code section 1125(a).

C.      **Approval of the Solicitation Procedures and Forms of Solicitation Materials**

25.      The Debtors also request that the Court approve the solicitation, balloting, tabulation, and related activities undertaken in connection with the Plan, all of which were commenced by the Debtors prior to the Petition Date (collectively, the "Solicitation Procedures").  As set forth below, the Debtors submit that the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Rules and Bankruptcy Code and should be approved.

      **1.      Non-Solicitation of Classes Presumed to Accept or Reject the Plan and Opportunity for Equity Interest Holders to Opt Out of Releases Provided under the Plan**

26.      The Plan provides that specific Classes of claims against, and interests in, the Debtors are presumed to accept or reject the Plan (collectively, the "Non-Voting Holders"). Specifically, the Plan provides that holders of claims in Class 1 (Other Secured Claims) and Class 4 (General Unsecured Claims) are unimpaired.  Pursuant to Bankruptcy Code section 1126(f), each holder of a claim or interest in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required."  11 U.S.C. § 1126(f).  Accordingly, holders of claims in each of the above-mentioned unimpaired Classes are conclusively presumed to accept the Plan and were not solicited.

27.      The Holders of Stone Equity Interests in Class 5 are receiving 4% of the New Common Stock and New Warrants to purchase another 10% of the New Common Stock under the Plan.  Notwithstanding the foregoing, the Debtors have determined that soliciting the holders of Stone Equity Interests in Class 5 as part of a prepackaged plan such as the Plan would be unduly expensive and time consuming and could jeopardize the recoveries contemplated by the Restructuring Support Agreement – which the Debtors firmly believe maximizes the recoveries for all of the Debtors' stakeholders.  To avoid the cost and time required to solicit votes from the

holders of Stone Equity Interests, the Debtors have presumed that such holders will reject the Plan and were therefore not solicited.

28.    The Debtors are requesting a waiver of the requirement that they mail copies of the Plan and Disclosure Statement to holders of claims and equity interests presumed to accept or reject the Plan, including the holders of Stone Equity Interests in Class 5.  See Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders).  The Debtors submit that Bankruptcy Rule 3017(d) does not apply here because the Debtors solicited acceptances and rejections of the Plan on a prepetition basis, and, thus, there is no disclosure statement that was "approved by the court" to transmit.  Alternatively, the Debtors respectfully request the Court to order that the Debtors are not required to provide such materials to unimpaired Classes.  Moreover, it would be a significant and unnecessary administrative burden on the Debtors to transmit the Disclosure Statement and Plan to holders of claims or interests that are conclusively presumed to accept or reject the Plan.

29.    In lieu of furnishing each of the Non-Voting Holders with a copy of the Plan and Disclosure Statement, the Debtors propose to send to such Non-Voting Holders the Combined Notice, which sets forth a summary of the Plan and the treatment of such Non-Voting Holders Claims or Interests and sets forth the manner in which a copy of the Prepackaged Plan and the Disclosure Statement may be obtained.  In addition, the Debtors have made the Disclosure Statement and the Plan available at no cost on the website of the Debtors' claims and noticing agent,   Epiq   Bankruptcy   Solutions,   LLC   (the   "Voting   Agent")   at http://dm.epiq11.com/StoneEnergy.

30.     In addition to the Combined Notice, the Debtors propose to send to holders of Stone Equity Interests a separate notice of non-voting status (the "Class 5 Notice of Non-Voting Status") that provides clear instructions regarding how such holders can make an election to opt out of the voluntary releases set forth in Article X.C of the Plan if they so desire.  On or as soon as practicable after the Effective Date, Holders of Stone Equity Interests that do not submit an Equity Release Opt Out prior to the Equity Opt Out Deadline will receive, in satisfaction of such interests, their respective pro rata shares of (i) approximately 4% of the New Common Stock; and (ii) the New Warrants.  However, Holders of Stone Equity Interests that do submit an Equity Release Opt Out prior to the Equity Opt Out Deadline will receive no distribution on account of such interests, and the shares of New Common Stock and New Warrants that would otherwise have been distributed to such Holder(s) will be distributed, pro rata, to Holders of Stone Equity Interests that did not submit a valid Equity Release Opt Out.

31.     To provide Holders of the Stone Equity Interests the opportunity to opt out of the voluntary releases set forth in Article X.C of the Plan and, in doing so, forego the opportunity to receive their respective pro rata shares of the New Common Stock and New Warrants, the Debtors propose to mail (or cause to be mailed) within two (2) business days of the entry of the Scheduling Order or as soon as reasonably possible thereafter, the Class 5 Notice of Non-Voting Status to Holders of Stone Equity Interests (as of the Voting Record Date), which includes a form whereby the Holders of Stone Equity Interests may elect to opt out of the releases in Article X.C of the Plan.  The Equity Opt Out Deadline for Holders to return the Equity Release Opt Out is February 13, 2017.

32.     The Debtors respectfully request that the Court approve the Solicitation Procedures with respect to the foregoing Non-Voting Holders.

**2.      Solicitation of Impaired Classes Entitled to Vote to Accept or Reject the Plan**

33.     Two classes of claims are impaired and were entitled to vote to accept or reject the Plan—Class 2 (Prepetition Banks Claims) and Class 3 (Prepetition Notes Claims) (collectively, the "Voting Classes").

34.     On November 17, 2016, the Debtors commenced solicitation of votes from members of the Voting Classes by transmitting copies of the solicitation package containing the Disclosure Statement, including the Plan and other exhibits thereto, a cover letter from the Debtors, and one or more ballots (the "Ballots"), as applicable, to each holder of an impaired claim (*i.e.*, Holders of claims in Class 2 and Class 3) (the "Solicitation Package") via first class mail.

35.     The Solicitation Package advised recipients, among other things, that the deadline for submitting a Ballot containing a vote to accept or reject the Plan is December 16, 2016 at 5:00 p.m. (Prevailing Central Time) (the "Voting Deadline").  The Solicitation Package further advised recipients that Ballots must be returned to the Voting Agent, and specified that Ballots must be returned by regular mail, hand delivery, or overnight courier to an address specified on the Ballot.  Each Ballot also contained detailed instructions on how to complete it and how to make any applicable elections contained therein.

36.     Moreover, the materials in the Solicitation Package established and communicated how the Voting Agent would tabulate the votes and elections contained in the Ballot.  Those tabulation rules provided, among other things, that: (i) a timely, properly completed Ballot submitted by a holder of claims in a Voting Class superseded and revoked any prior Ballot(s) submitted by that holder; (ii) Ballots that attempt to partially accept and partially reject the Plan were not to be counted; (iii) illegible Ballots were not to be counted; (iv) Ballots containing insufficient information to identify the claimant were not to be counted; (v) any form

of ballot other than the official form of Ballot sent by the Voting Agent was not to be counted; (vi) Ballots received after the Voting Deadline (provided that the Voting Deadline has not been extended) were not to be counted; and (vii) each beneficial Holder of Prepetition Notes Claims in Class 3 must certify that it is an "accredited investor" as defined in Rule 501 of Regulation D under the Securities Act (as defined below), and Ballots received from any beneficial Holders of Prepetition Notes Claims who are not "accredited investors" were not to be counted.  As specified on the Ballot, any Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, will not be counted as a vote in determining acceptance or rejection of the Plan.

      **3.**        **Form of Ballot**

      37.      Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 14.  The Ballots, copies of which are attached as Exhibits B-1 through B-3 to this Motion, are based on Official Form No. 14, but were modified to address the particular aspects of these Chapter 11 Cases and to be relevant and appropriate for each Voting Class.  With respect to the Voting Classes, the Debtors distributed three (3) forms of Ballots: (i) one (1) form of Ballot for beneficial owners holding Prepetition Notes Claims through a nominee or as record holder in its own name (a "Beneficial Owner Ballot"); (ii) one (1) form of Ballot for a nominee that is the registered holder of Prepetition Notes Claims to transmit the votes of one or more beneficial owners (the "Master Ballot"); and (iii) one (1) form of Ballot for the Holders of Prepetition Banks Claims.  As set forth above, to be counted as votes to accept or reject the Plan, the Ballots are required to be properly executed, completed, and delivered to the Voting Agent so that they are received no later than the Voting Deadline; provided, however, that beneficial Holders of Prepetition Notes Claims who received a

Beneficial Owner Ballot from a bank or brokerage firm (or its agent) were advised to return the Beneficial Owner Ballot to such intermediary firm (or its agent) with sufficient time for such intermediary to complete and return the Master Ballot to the Voting Agent prior to the Voting Deadline.  In addition, each of the Ballots was specifically designed to conform to the Plan.

### 4.      Compliance with Non-Bankruptcy Securities Laws Applicable to Prepetition Solicitation

38.      Bankruptcy Code section 1126(b) expressly permits a debtor to solicit votes from holders of claims and equity interests prepetition without a court-approved disclosure statement if the solicitation complies with applicable non-bankruptcy law—including generally applicable federal and state securities laws or regulations—or, if no such laws exist, the solicited holders receive "adequate information" within the meaning of Bankruptcy Code section 1125(a).

39.      The Solicitation Procedures comply with all applicable non-bankruptcy laws governing the adequacy of disclosure in connection with the solicitation.   The Debtors' prepetition Solicitation Procedures are exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "Securities Act") and under state "Blue Sky" laws, or any similar rules, regulations, or statutes.   Specifically, Section 4(a)(2) of the Securities Act creates an exemption from the registration requirements under the Securities Act for certain transactions not involving a "public offering."   See Securities Act, 15 U.S.C. § 77(d)(a)(2); see also § 77(R)(a)(1)(a), (b)(4)(F) (exempting transactions covered by the public offering exception from Blue Sky laws).   The Debtors have complied with the requirements of Section 4(a)(2) of the Securities Act and Regulation D thereunder, with respect to the requirements for transactions exempt from the registration requirements under the Securities Act.   Ballots sent to beneficial Holders of Prepetition Notes Claims in Class 3 stated that such Holders must certify that they are

21

"accredited investors" as defined in Rule 501 of Regulation D under the Securities Act, and Ballots received from beneficial Holders of Prepetition Notes Claims that are not "accredited investors" will not to be counted; provided, however, that all Holders of Allowed Prepetition Notes Claims will be entitled to receive distributions under the Plan.  See, e.g., Regulation D, 17 C.F.R. § 230.506 (deeming a transaction a non-public offering under section 4(a)(2) of the Securities Act if the transaction only involves accredited investors, provided certain other conditions are satisfied).  Therefore, the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtors' prepetition solicitation.

40.    The Debtors respectfully submit that the Solicitation Procedures satisfy Bankruptcy Code section 1126(b)(2) because all Holders in the Voting Classes received "adequate information" as that term is used in Bankruptcy Code section 1125(a).  Therefore, the Solicitation Procedures should be approved.

**5.    Continuation of the Debtors' Prepetition Solicitation After the Petition Date**

41.    The Debtors distributed the Disclosure Statement and Ballots to the members of the Voting Classes prior to the Petition Date in accordance with sections 1125 and 1126 of the Bankruptcy Code.  See 11 U.S.C. § 1125(g) ("[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.").  Although the Debtors do not believe that the Disclosure Statement must be conditionally approved for the Debtors' prepetition solicitation to continue postpetition, the Debtors, out of an abundance of caution, request that the Court conditionally approve the Disclosure Statement if the Court deems it necessary to do so.

42.    Courts in this and other districts routinely have recognized that debtors may "straddle" solicitation by commencing solicitation prior to the petition date and continuing

postpetition.  See, e.g., In re Light Tower Rentals, Inc., Case No. 16-34284 (DRJ) (Bankr. S.D. Tex. Sept. 1, 2016) (approving solicitation commenced prior to petition date); In re Goodrich Petroleum Corp., Case No. 16-31975 (MI) (Bankr. S.D. Tex. Apr. 18, 2016); In re Southcross Holdings LP, Case No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016) (same); In re Transcoastal Corp., Case No. 15-34956 (HDH) (Bankr. N.D. Tex. Dec. 18, 2015); In re Reddy Ice Holdings, Inc., Case No. 12-32349 (SGJ) (Bankr. N.D. Tex. Apr. 12, 2012); In re Cross Canyon Energy Corp., Case No. 10-30747 (JB) (Bankr. S.D. Tex. Mar. 10, 2010)

**6.    Voting Record Date and Voting Deadline**

43.    Bankruptcy Rule 3017(d) provides that, for the purpose of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.  Bankruptcy Rule 3018(b) provides, among other things, that prepetition acceptances or rejections of a plan are valid only if the plan was "transmitted to substantially all creditors and equity security holders of the same class" and that the time for voting was not "unreasonably short." Fed. R. Bankr. P. 3018(b).

44.    The Solicitation Packages were (or will be, after entry of the Scheduling Order, with respect to the Non-Voting Holders) distributed to all Holders of claims and equity interests in the Voting Classes as of November 9, 2016 (the "Voting Record Date").  The Voting Record Date and the Voting Deadline were clearly identified in the Disclosure Statement and each of the Ballots.

45. All Holders of claims and equity interests in the Voting Classes will have adequate time to consider the materials in the Solicitation Packages. As an initial matter, the Consenting Noteholders, who represent 79.7% in principal amount of the Prepetition Notes Claims in Class 3, and later the Consenting Banks, played an instrumental role in negotiating the terms of the Plan and Disclosure Statement with the Debtors and certain other key constituencies over a period of several months. Through their participation in that process, the Consenting Noteholders and the Consenting Banks have had ample time to extensively review the Plan and Disclosure Statement, whether directly, or through their professional advisors. Given these circumstances and the fact that the Voting Deadline is twenty-nine (29) days after the commencement of solicitation, the Debtors submit that the members of the Voting Classes will have a sufficient amount of time to make an informed decision to accept or reject the Plan.

**7.      Amendment to the Plan After the Launch of Solicitation**

46. While the Plan has been amended since Solicitation was launched on November 17, 2016, the Debtors have locked up the necessary voting support from the Consenting Noteholders and the Consenting Banks, members of the only Voting Classes under the Plan, and believe moving forward with Solicitation will provide the Debtors and their stakeholders with the most efficient and practical path forward in these Chapter 11 Cases. The Debtors do not believe that resolicitation is necessary because even if the non-consenting members of the Voting Classes voted to reject the Plan the Debtors would still receive the requisite votes to accept the Plan from each Voting Class. This is because the Consenting Noteholders and the Consenting Banks are contractually obligated pursuant to the Restructuring Support Agreement to vote in favor of the Plan. Class 5 Stone Equity Interests are presumed to reject the Plan and thus are not entitled to vote even upon resolicitation.

47.     Further, the Debtors believe that the Disclosure Statement provides adequate notice of potential amendments to the Original Plan, as the Disclosure Statement highlighted that modifications might be forthcoming if the Debtors reached an agreement with the Consenting Banks, as is the case here.  Finally, the noticing procedures set forth in this Motion provide sufficient notice to all Classes (including Class 5 Equity Interests) so that each will be aware of the Plan, as amended, and the Combined Hearing.

**D.     Confirmation of the Plan**

48.     The Debtors believe that the Plan satisfies all of the requirements for confirmation under the Bankruptcy Code.  As noted above, the Debtors have requested that the Court schedule the Combined Hearing, at which time the Debtors will seek confirmation of the Plan.  Before the Combined Hearing, the Debtors will file a brief in support of confirmation that, among other things, (i) demonstrates that the Plan satisfies the requirements for plan confirmation set forth in Bankruptcy Code section 1129 and (ii) responds to objections to confirmation, if any.

**E.     Deadline and Procedures for Objections to the Disclosure Statement and Confirmation of the Prepackaged Plan**

49.     Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement and Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to a plan of reorganization.  Further, Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement and confirmation of a plan of reorganization.

50.     The Debtors request that the Court set 5:00 p.m. (Prevailing Central Time) on January 23, 2017 as the deadline to file by hand delivery to the Clerk of the Court, and January 26, 2017 to electronically file, objections to the adequacy of the Disclosure Statement or

US-DOCS\71510109.18

confirmation of the Plan (the "Objection Deadline").  The proposed Objection Deadline will provide creditors and equity interest holders with sufficient notice of the deadline for filing objections to the Disclosure Statement and Plan, while still affording the Debtors and any parties in interest time to file a responsive brief and resolve consensually as many of those objections as possible.

51.     The Debtors further request that the Court direct that any responses or objections to the adequacy of the Disclosure Statement and confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (iv) be filed with the Clerk of this Court prior to 5:00 p.m. (Prevailing Central Time) on January 23, 2017 (Prevailing Central Time), if filed by hand with the Clerk of the Court, or January 26, 2017, if filed electronically with the Clerk of the Court.

52.     The Debtors further request that the Plan Support Parties be authorized to file replies to any objections or responses to confirmation received by the Objection Deadline on or prior to 2:00 p.m. (Prevailing Central Time) on February 9, 2017.

**F.     Approval of Form and Manner of Notice of the Commencement of the Chapter 11 Cases, the Combined Hearing, and the Objection Deadline**

53.     The Debtors propose to mail (or cause to be mailed) within two (2) business days of the entry of the Scheduling Order or as soon as reasonably possible thereafter, to all known Holders of claims against and interests in the Debtors a notice (the "Combined Notice"), substantially in the form attached as Exhibit 1 to the Scheduling Order, setting forth, among other things, (i) the notice of commencement of the Chapter 11 Cases, (ii) the date, time, and place of the Combined Hearing, (iii) instructions for obtaining copies of the Disclosure Statement and Plan, (iv) the Objection Deadline and procedures for filing objections to the

adequacy of the Disclosure Statement and/or confirmation of the Plan, and (v) a summary of the Plan.

54.     The Debtors propose to send the Combined Notice to Holders of the Prepetition Notes Claims as reflected in the records maintained by the Debtors' transfer agent(s) or trustee(s) as of the close of business on the Record Date.  The Debtors realize, however, that the records maintained by such transfer agent(s) or trustee(s) reflect the brokers, dealers, commercial banks, trust companies, or other agents or nominees (collectively, "Nominees") through which the beneficial owners hold the various securities.  Accordingly, the Debtors request that the Court authorize (i) the Debtors to provide the Nominees with sufficient copies of the Combined Notice to forward to the beneficial holders and (ii) the Nominees to forward the Combined Notice or copies thereof to the beneficial holders within five (5) business days of the receipt by such Nominee of the Combined Notice.  To the extent the Nominees incur out-of-pocket expenses in connection with distribution of the Combined Notice, the Debtors request authority to reimburse such entities for their reasonable and customary expenses incurred in this regard.

55.     Bankruptcy Rule 2002(f)(1) provides that notice of "the order for relief" shall be sent by mail to all creditors.  Bankruptcy Rule 2002(d) similarly provides that, unless otherwise ordered by the court, notice of the "order for relief" shall be given to all of the Debtors' equity security holders.

56.     In addition, Bankruptcy Rule 2002(*l*) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors request that the Court authorize them, in consultation with counsel to the

Required Consenting Noteholders,[8] to provide supplemental publication notice of the Combined Hearing not less than twenty-eight (28) days prior to the Combined Hearing Date in the *Houston Chronicle* and the national edition of *USA Today*, and any other trade or other publications the Debtors, the Required Consenting Noteholders and the Required Consenting Banks deem prudent (the "Publication Notice").  The Debtors believe that the publication of certain of the contents of the Combined Notice in this manner would provide sufficient notice of the date, time, and place of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Combined Notice by mail.  Accordingly, the Debtors respectfully request that this Court approve the form and manner of service of the Combined Notice in the foregoing manner.

57.     To provide another layer of notice to parties in interest in these Chapter 11 Cases, the Debtors will propose to post to the Voting Agent's website various chapter 11 documents, including the following: (i) the Plan, (ii) the Disclosure Statement, (iii) this Motion and any orders entered in connection with this Motion, and (iv) the Combined Notice.  Moreover, notice of the commencement of these Chapter 11 Cases will be filed with the Securities and Exchange Commission on Form 8-K and, thus, will be available to interested parties through the Securities and Exchange Commission's EDGAR website.

58.     The proposed service of the Combined Notice will provide sufficient notice to all parties in interest in the Chapter 11 Cases of the commencement of such cases; the date, time, and place of the Combined Hearing; and the procedures for objecting to the adequacy of the Disclosure Statement and/or the confirmation of the Plan.  In addition, the Publication Notice

---

[8] "Required Consenting Noteholders" and "Required Consenting Banks" have the meanings ascribed to such terms in that certain Amended and Restated Restructuring Support Agreement dated as of the date hereof, as the same has been amended and modified in accordance with its terms.

will provide sufficient notice to persons who did not otherwise receive notice pursuant to the Combined Notice.

**G.      Extension and Conditional Waiver of the 341 Meeting and the Filing of SOFAs and Schedules**

59.      The Debtors also request that the Scheduling Order provide that: (i) the 341 Meeting shall not be scheduled by the U.S. Trustee before February 22, 2017, which is approximately seventy-one (71) days from the Petition Date; (ii) the time for filing the SOFAs and Schedules be extended until the same date; and (iii) if the Plan is confirmed on or before February 15, 2017, the 341 Meeting will be waived, and the Debtors will be excused from filing the SOFAs and Schedules, in each case without further order of the Court.   This relief is appropriate under the circumstances, because the Debtors anticipate the near-term confirmation of the Plan and subsequent emergence from chapter 11, with all Holders of Allowed General Unsecured Claims paid in full in the ordinary course of business, in cash.   Granting this relief conditionally at the outset of the Chapter 11 Cases also allows the U.S. Trustee to schedule a 341 Meeting, if it eventually becomes appropriate to do so.

60.      While section 341 of the Bankruptcy Code requires the U.S. Trustee to convene and preside at a meeting of creditors, it also provides for the following exception:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).  The Debtors solicited votes to accept or reject the Plan by the Voting Classes before the Petition Date, and, therefore, the requested conditional relief pursuant to section 341(e) is appropriate here.

61.     The Debtors also request that the time for filing their SOFAs and Schedules be extended until February 22, 2017 and to be waived in the event the Plan is confirmed.  Sufficient cause exists here because requiring the Debtors to file Schedules and SOFAs in the first thirty (30) days of these Chapter 11 Cases would divert management's time and attention from ensuring a smooth transition into chapter 11.  The Schedules and SOFAs, even if filed on the current deadline, would be of little benefit to most parties in interest in these Chapter 11 Cases at that point, while requiring a substantial expenditure of time and resources by the Debtors to prepare and file.  Therefore, the Court should require the Debtors to file Schedules and SOFAs only if the Plan is not confirmed within the timetable contemplated by the Debtors and their major constituencies.

62.     Courts in this and other districts have waived the requirements for a debtor to file Schedules and SOFAs and for the U.S. Trustee to convene a 341 Meeting in other prepackaged chapter 11 cases under similar circumstances.  See, e.g., In re Light Tower Rentals, Inc., Case No. 16-34284 (DRJ) (Bankr. S.D. Tex. Sept. 1-2, 2016) (permanently waiving requirement to file schedules and statements upon confirmation if plan confirmed by deadline and directing U.S. Trustee not to convene a meeting of creditors if plan confirmed by deadline); In re Southcross Holdings, LP, Case No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016) (extending the deadline to file schedules and statements until after confirmation, at which point the requirement was waived); In re Transcoastal Corp., Case No. 15-34956 (HDH) (Bankr. N.D. Tex. Dec. 18, 2015) (directing the U.S. Trustee not to convene a meeting of creditors or equity security holders); In re Cross Canyon Energy Corp., Case No. 10-30747 (JB) (Bankr. S.D. Tex. Mar. 11, 2010) (waiving section 341 meeting where the impaired classes voted unanimously to accept the plan).

63.     The Debtors reserve the right to supplement this Motion and request that any relief granted be without prejudice to the Debtors' ability to seek further extension or modification of the requirements to file Schedules and SOFAs and for the U.S. Trustee to convene a 341 Meeting.  In this regard, the Debtors request that the Court authorize the Debtors to further extend the deadline to file Schedules and SOFAs and convene a 341 Meeting without filing a supplemental motion so long as they have procured advance consent from the U.S. Trustee.

## H.     Approval of Procedures for Equity Release Opt Out

64.     Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Rule 3017(d)] to beneficial holders of stock . . . , determine the adequacy of the procedures, and enter any orders the court deems appropriate."  Fed. R. Bankr. P. 3017(e).  Under the Plan, Holders of Stone Equity Interests are presumed to reject the Plan and therefore were not entitled to receive a Ballot.  Nevertheless, Holders of Stone Equity Interests will be given the opportunity to receive a distribution under the Plan subject to certain conditions.  To provide Holders of Stone Equity Interests with the opportunity to opt out of the voluntary releases set forth in Article X.C of the Plan and, in doing so, forego distributions that they would otherwise receive under the Plan, the Debtors will cause the Class 5 Notice of Non-Voting Status to be distributed to all such Holders.

65.     The Class 5 Notice of Non-Voting Status is attached as Exhibit 2 to the Scheduling Order.  Attached as Exhibit A to the Class 5 Notice of Non-Voting Status is the form whereby Holders of Stone Equity Interests may elect to opt out of the release in Article X.C of the Plan and forego their right to receive their respective pro rata shares of the New Common Stock and New Warrants (*i.e.*, the Equity Release Opt Out).  The notice and election form contain the full text of the release in Article X.C of the Plan, provides instructions for opting out

31

of the release in Article X.C of the Plan, and discloses the effect of opting out, including that holders electing to opt out of the releases will not receive any distributions under the Plan whatsoever – having instead elected to retain any direct causes of action such holders may assert. The Class 5 Notice of Non-Voting Status also includes instructions for where Holders of Stone Equity Interests can obtain copies of the Plan, Disclosures Statement, and related exhibits such as the valuation analysis, financial projections, and plan supplement documents and information generally about the Plan and Confirmation Hearing.   Under the circumstances, the Debtors submit that the Class 5 Notice of Non-Voting Status will be adequate and appropriate to provide Holders of Stone Equity Interests notice of their non-voting status and the opportunity to opt out of the voluntary releases set forth in Article X.C and should be approved.

66.     Except as noted above, the Debtors estimate that Holders of Stone Equity Interests will have approximately thirty (30) days to complete and return the Equity Release Opt Out attached to the Class 5 Notice of Non-Voting Status before the Equity Opt Out Deadline. Further, the Class 5 Notice of Non-Voting Status will provide clear instructions on how Holders can submit the Equity Release Opt Out.  Accordingly, the procedures employed for distributing, collecting, and recording the elections are adequate to provide Holders of Stone Equity Interests the opportunity to opt out of the releases set forth in Article X.C of the Plan and should be approved.

## I.     The Contract Assumption Procedures and Assumption Notice Are Appropriate and Should Be Approved

67.     In connection with the potential assumption of executory contracts and unexpired leases, the Debtors believe it is necessary to establish a process by which (i) the Debtors and the Counterparties can reconcile cure obligations, if any, in accordance with Section 365 of the

Bankruptcy Code, and (ii) such Counterparties can object to the assumption of Assumed Contracts and any applicable Cure Amounts.

68.     As set forth in the Contract Assumption Procedures, the Debtors are also requesting that any Counterparty that fails to object to the proposed assumption of any Assumed Contract be deemed to consent to the assumption of the applicable Assumed Contract pursuant to Section 365 of the Bankruptcy Code, notwithstanding any anti-alienation provision or other restriction on assignment.  See, e.g., Hargrave v. Township of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); Pelican Homestead v. Wooten (In re Gabel), 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

69.     The Debtors respectfully submit that the proposed Contract Assumption Procedures are appropriate and reasonably tailored to provide adequate notice in the form of the Assumption Notice, including the proposed Cure Amounts that shall be communicated pursuant thereto, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof.  The Counterparties will then be given an opportunity to object to such Cure Amounts.  If a Contract Objection is timely filed, such objection will be heard at a later hearing, in accordance with the Court's schedule. Accordingly, the Debtors submit that implementation of the proposed Contract Assumption Procedures and corresponding Assumption Notice is appropriate in these Chapter 11 Cases and the Debtors request that the Court approve the Contract Assumption Procedures and the Assumption Notice.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

70.     The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the Beer Declaration, the relief

requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## NOTICE

71.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (iii) the Bank Agent; (iv) counsel to the Consenting Banks; (v) the indenture trustee for the Senior Convertible Notes due 2017 (the Convertible Notes"); (vi) the indenture trustee for the Senior Notes due 2022 (the "Senior Notes"); (vii) counsel to the ad hoc group of holders of Convertible Notes and Senior Notes; (viii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; and (x) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

US-DOCS\71510109.18

**WHEREFORE**, the Debtors respectfully request entry of the Scheduling Order granting

the relief requested and any other relief as is just and proper.

Dated: December 14, 2016
        Houston, Texas

Respectfully,

/s/ John F. Higgins
John F. Higgins (TX Bar No. 09597500)
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
Brandon J. Tittle (TX Bar No. 24090436)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:  (713) 226-6000
Facsimile:  (713) 226-6295
Email: jhiggins@porterhedges.com
        jwolfshohl@porterhedges.com
        apower@porterhedges.com
        btittle@porterhedges.com

- and -

Michael E. Dillard (TX Bar No. 05866000)
**LATHAM & WATKINS LLP**
811 Main Street, Suite 3700
Houston, TX 77002
Telephone:  (713) 546-7414
Facsimile:  (713) 546-5401
Email: michael.dillard@lw.com

- and -

David S. Heller (*pro hac vice* admission pending)
Josef S. Athanas (*pro hac vice* admission pending)
Caroline A. Reckler (*pro hac vice* admission pending)
Matthew L. Warren (*pro hac vice* admission pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9667
Email: david.heller@lw.com
        josef.athanas@lw.com
        caroline.reckler@lw.com
        matthew.warren@lw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

US-DOCS\71510109.18

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 14, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *John F. Higgins*
John F. Higgins