IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| **STONE ENERGY CORPORATION,** *et al.*,[1] | § | CASE NO. 16-36390 (MI) |
| | § | (Joint Administration Pending) |
| Debtors. | § | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR
ORDER UNDER 11 U.S.C. §§ 105(a) AND 366 AND FED. R. BANKR. P.
6003 AND 6004 (I) PROHIBITING UTILITY COMPANIES FROM ALTERING
OR DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION INVOICES,
(II) APPROVING DEPOSIT AS ADEQUATE ASSURANCE OF PAYMENT, AND
(III) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS BY
UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT**

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER FOR DECEMBER 16, 2016, AT 1:30 PM (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for entry of an order, under Sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules

---

[1] The Debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Stone Energy Corporation (5413); Stone Energy Holding, L.L.C. (3151); and Stone Energy Offshore, L.L.C. (8062). The above-captioned Debtors' mailing address is 625 E. Kaliste Saloom Road, Lafayette, Louisiana 70508.

6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) prohibiting the Debtors' utility service providers from altering, refusing, or discontinuing service, (ii) approving an adequate assurance deposit as adequate assurance of postpetition payment to the utility companies, and (iii) establishing procedures for resolving any subsequent requests by the utility companies for additional adequate assurance of payment. In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Kenneth H. Beer, Executive Vice President and Chief Financial Officer of Stone Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions*, filed with the Court concurrently herewith (the "Beer Declaration"). In further support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are Bankruptcy Code Sections 105(a) and 366 and Bankruptcy Rules 6003 and 6004.

## EMERGENCY CONSIDERATION

2. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Failure to receive the applicable relief during the first 21 days of these Chapter 11 Cases

would thus severely disrupt the Debtors' operations at this critical juncture.  Particularly, the Debtors require immediate consideration of this Motion to prevent the Utility Companies (as defined below) from unilaterally altering, refusing or discontinuing Utility Services (as defined below) to the Debtors immediately following the thirtieth (30th) day after the Petition Date (as defined below).  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Beer Declaration, which is fully incorporated herein by reference.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108.  As of the date hereof, no trustee or examiner has been requested in the Chapter 11 Cases, and no committee has been appointed.

## RELIEF REQUESTED

5. By this Motion, the Debtors request entry of an order, substantially in the form attached hereto, approving procedures that would provide adequate assurance of payment to their utility service providers (each a "Utility Company" and collectively, the "Utility Companies")[2]

---

[2] The Utility Companies known to and identified by the Debtors to date are listed on Exhibit A hereto.  While the Debtors have used their best efforts to list all of their Utility Companies on Exhibit A, it is possible that certain Utility Companies may have been inadvertently omitted from this list.  Accordingly, the Debtors reserve the right, under the terms and conditions of this Motion and without further order of the Court, to amend Exhibit A to add any
(cont'd)

under Bankruptcy Code Section 366, while allowing the Debtors to avoid the threat of imminent termination of electricity, water, natural gas, waste removal, telephone, internet, alarm, telecommunication and similar utility products and services (collectively, the "Utility Services") from the Utility Companies.  Specifically, the Debtors request entry of an order (a) approving the Debtors' deposit of $69,363 (which is approximately 50% of the estimated monthly cost of the Utility Services, based on historical averages over the prior twelve (12) months) into a newly created, segregated, interest-bearing account, as adequate assurance of postpetition payment to the Utility Companies pursuant to Bankruptcy Code Section 366(b), (b) approving the additional adequate assurance procedures described below as the method for resolving disputes regarding adequate assurance of payment to the Utility Companies, and (c) prohibiting the Utility Companies from altering, refusing, or discontinuing services to the Debtors except as may be permitted by the proposed procedures.

A. **The Debtors' Utility Companies**

6. As of the Petition Date, approximately 35 Utility Companies provide Utility Services to the Debtors at various locations through approximately 115 accounts.  The Utility Companies primarily service the Debtors' corporate office in Lafayette, Louisiana and the Debtors' operations and facilities related to oil and gas production and development in Louisiana, Texas, and West Virginia.  On average, prior to the Petition Date, the Debtors spent approximately $138,727 each month on utility costs and generally made timely payments of utility costs.  The Debtors are not currently aware of any past due amounts owed to any of the

---
(cont'd from previous page)
Utility Companies that were omitted therefrom and to request that the relief requested herein apply to all such entities as well.  In addition, the Debtors and all other parties in interest reserve the right to argue that any of the entities now or hereafter listed on Exhibit A is not a "utility" within the meaning of Bankruptcy Code Section 366(a).

Utility Companies. Based on the timing of the filings in relation to the Utility Companies' billing cycles, however, there may be utility costs that have been invoiced to the Debtors for which payment is not yet due and utility costs for services provided since the end of the last billing cycle that have not yet been invoiced to the Debtors.

7. The Utility Services are crucial to the Debtors' operations. If the Utility Companies refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted.

**B.     The Adequate Assurance Deposit**

8. The Debtors intend to pay all postpetition obligations owed to the Utility Companies in a timely manner. Nevertheless, to provide additional assurance of payment for future services to the Utility Companies, the Debtors will deposit $69,363, which is an amount equal to approximately fifty percent (50%) of the estimated monthly cost of the Utility Services, into a newly created, segregated, interest-bearing account, within twenty (20) days of the Petition Date (the "Adequate Assurance Deposit"). The Adequate Assurance Deposit will be maintained during the Chapter 11 Cases with a minimum balance equal to fifty percent (50%) of the Debtors' estimated monthly cost of Utility Services, which may be adjusted by the Debtors to account for the termination of Utility Services by the Debtors or other arrangements with respect to adequate assurance of payment reached with individual Utility Companies.

9. The Debtors further propose that, to the extent the Debtors become delinquent with respect to a Utility Company's account, such Utility Company shall be permitted to file a written notice of such delinquency (the "Delinquency Notice") with the Court and serve such Delinquency Notice on: (a) Stone Energy Corporation, 625 East Kaliste Saloom Rd., Lafayette, LA 70508 (Attn: Lisa S. Jaubert); (b) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 (Attn: Caroline A. Reckler, Esq. and Matthew L. Warren, Esq.); (c)

counsel to the administrative agent for the Debtors' prepetition secured financing, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: George Davis, Esq.); (d) counsel to the ad hoc group of holders of Convertible Notes and Senior Notes (each as defined below), Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036 (Attn: Michael S. Stamer, Esq. and Meredith A. Lahaie, Esq.); (e) counsel to the official committee of unsecured creditors, if one is appointed; and (f) the United States Trustee for the Southern District of Texas (each, a "<u>Delinquency Notice Party</u>").  Such Delinquency Notice must (a) set forth the amount of the delinquency, (b) set forth the location for which utility services are provided, and (c) provide the Debtors' account number(s) with the applicable Utility Company.

10.     The Debtors propose that if such delinquency is not cured and no Delinquency Notice Party has objected to the Delinquency Notice within ten (10) days of the receipt thereof, the Debtors will be required to (a) remit to such Utility Company from the Adequate Assurance Deposit the amount of postpetition charges claimed as delinquent in the Delinquency Notice and (b) replenish the Adequate Assurance Deposit for the amount remitted to such Utility Company. If a Delinquency Notice Party objects to the Delinquency Notice, then the Debtors propose that the Court hold a hearing to resolve the dispute and determine whether a payment should be remitted from the Adequate Assurance Deposit and, if such payment is warranted, the amount that should be remitted.

11.     The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business, constitutes sufficient adequate assurance to the Utility Companies.  If any Utility Company

believes that additional assurance is required, it may request such assurance pursuant to the procedures described below.

C.     **The Additional Adequate Assurance Procedures**

12.     In the event that any Utility Company requests additional adequate assurance of payment pursuant to Bankruptcy Code Section 366(c)(2), the Debtors propose that such request be addressed pursuant to the following procedures (the "<u>Additional Adequate Assurance Procedures</u>"):

(a)     Except as provided by the Additional Adequate Assurance Procedures, the Utility Companies are forbidden to (i) alter, refuse, or discontinue services to, or discriminate against, the Debtors on account of unpaid prepetition invoices or any objections to the Debtors' Adequate Assurance Deposit, or due to the commencement of the Chapter 11 Cases or (ii) require the Debtors to pay a deposit or other security in connection with the provision of postpetition Utility Services, other than the establishment of the Adequate Assurance Deposit.

(b)     The Debtors will serve on the Utility Companies copies of this Motion and the order granting the relief requested herein within forty-eight (48) hours after the entry of such order.

(c)     In the event that a Utility Company asserts that the Adequate Assurance Deposit is not satisfactory adequate assurance of payment as contemplated by Bankruptcy Code Section 366(c)(2), that Utility Company must serve a written request (an "<u>Additional Adequate Assurance Request</u>") for adequate assurance in addition to or in lieu of its rights in the Adequate Assurance Deposit. All Additional Adequate Assurance Requests shall be delivered by mail and email to each of the following: (i) Stone Energy Corporation, 625 East Kaliste Saloom Rd., Lafayette, LA 70508 (Attn: Lisa S. Jaubert), Email: JaubertLS@StoneEnergy.com; (ii) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 (Attn: Caroline A. Reckler and Matthew L. Warren), Email: caroline.reckler@lw.com, matthew.warren@lw.com; (iii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn: Michael S. Stamer, Esq. and Meredith A. Lahaie, Esq.), Email: mstamer@akingump.com, mlahaie@akingump.com; and (iv) O'Melveny & Myers, 7 Times Square, New York, NY 10036 (Attn: Michael F. Lotito and Suzzanne Uhland), Email: mlotito@omm.com, suhland@omm.com.

(d)     Any Additional Adequate Assurance Request must (i) set forth the location(s) for which Utility Services are provided, (ii) set forth the

       account number(s) for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposit(s), (iv) set forth what the Utility Company would accept as satisfactory adequate assurance of payment, and (v) provide a facsimile number and an email address to which the Debtors may respond to the Additional Adequate Assurance Request.

(e)     Upon the Debtors' receipt of an Additional Adequate Assurance Request, the Debtors will promptly negotiate with the Utility Company to resolve the Additional Adequate Assurance Request.

(f)     Without further order of the Court, the Debtors may resolve an Additional Adequate Assurance Request by entering into agreements granting additional adequate assurance to the requesting Utility Company if the Debtors, in consultation with the Required Consenting Noteholders and Required Consenting Banks,[3] determine that the Additional Adequate Assurance Request is reasonable or if the parties negotiate alternative consensual provisions.

(g)     If the Debtors, in consultation with the Required Consenting Noteholders and Required Consenting Banks, determine that the Additional Adequate Assurance Request is not reasonable and are not able to promptly reach an alternative resolution with the Utility Company, the Debtors will request a hearing before this Court (the "Determination Hearing").

(h)     The Determination Hearing will be an evidentiary hearing at which the Court will determine whether the Adequate Assurance Deposit and the additional adequate assurance of payment requested by the Utility Company should be modified pursuant to Bankruptcy Code Section 366(c)(3).

(i)     Any Utility Company that does not serve an Additional Adequate Assurance Request will be deemed to have received adequate assurance of payment that is satisfactory to such Utility Company within the meaning of Bankruptcy Code Section 366(c)(2).

(j)     All Utility Companies, including subsequently added Utility Companies, will be prohibited from altering, refusing or discontinuing Utility Services to the Debtors, or from discriminating against the Debtors with respect to the provision of Utility Services, absent further order of this Court.

---

[3] "Required Consenting Noteholders" and "Required Consenting Banks" have the meanings ascribed to such terms in that certain Amended and Restated Restructuring Support Agreement dated as of the date hereof, as the same has been amended and modified in accordance with its terms.

13. If a Utility Company argues that the Adequate Assurance Deposit and the Additional Adequate Assurance Procedures are not satisfactory and that the Utility Company is entitled to unilaterally alter, refuse or discontinue Utility Services to the Debtors immediately following the thirtieth (30th) day after the Petition Date, the Debtors will have the opportunity, to the extent necessary, to request that the Court make such modifications to the proposed adequate assurance of payment in time to avoid any potential termination of Utility Services.

### D. Subsequently Identified Utility Companies

14. The Debtors seek authorization, in consultation with the Required Consenting Noteholders and Required Consenting Banks, to amend <u>Exhibit A</u> attached hereto to add or delete any Utility Company. To the extent that the Debtors subsequently identify any additional Utility Companies that provide Utility Services to them, the Debtors propose to add such Utility Companies to <u>Exhibit A</u> by filing such revised Exhibit A on the docket in these Chapter 11 Cases and to have the terms of the orders with respect to this Motion apply to any such Utility Companies. The Debtors will serve on any of the subsequently identified Utility Companies a copy of this Motion and the orders entered with respect to the Motion, along with an amended <u>Exhibit A</u> that includes such Utility Company.

### **BASIS FOR RELIEF**

15. Congress enacted Bankruptcy Code Section 366 to protect debtors from utility service cutoffs upon a bankruptcy filing while, at the same time, providing utility companies or providers with adequate assurance that the debtors will pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. In the context of chapter 11 cases, the statutory framework for debtor protections and adequate assurance obligations was modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("<u>BAPCPA</u>") with the addition of Bankruptcy Code Section 366(c).

16. Under Bankruptcy Code Section 366(c), a utility may alter, refuse or discontinue utility service if a debtor has not provided satisfactory adequate assurance within thirty (30) days of its bankruptcy filing. In addition, Bankruptcy Code Section 366(c) restricts the factors that a court can consider when determining whether an adequate assurance proposal is, in fact, adequate. Specifically, courts may not consider (a) the absence of a security deposit before the debtor's bankruptcy filing date, (b) the debtor's history of timely payments, or (c) the availability of administrative expense priority, in determining the amount of a deposit. Bankruptcy Code Section 366(c), however, does not limit the court's ability to determine the amount of payment necessary, if any, to provide adequate assurance. Instead, Bankruptcy Code Section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance as they previously had under Bankruptcy Code Section 366(b). *Compare* 11 U.S.C. § 366(b) (2004) (pre-BAPCPA) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance."), *with* 11 U.S.C. § 366(c)(3)(A) (2005) (post-BAPCPA) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)."); *see also* Richard Levin & Alesia Ranney-Marinelli, *The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Protection and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 603, 608-09 (2005) (stating that courts would likely continue to determine the amount and form of adequate protection after the implementation of BAPCPA).

17. By making the Adequate Assurance Deposit and establishing the Additional Adequate Assurance Procedures, the Debtors seek to provide adequate assurance to the Utility Companies and to implement an orderly process to determine any challenges to the adequacy of

such adequate assurance. Without the Additional Adequate Assurance Procedures, the Debtors could be forced to address numerous requests by Utility Companies in an unorganized manner at a critical period in the Chapter 11 Cases. The orderly process contemplated by the Additional Adequate Assurance Procedures, therefore, is necessary for a smooth transition by the Debtors into chapter 11.

18. The relief requested herein does not undermine the rights of the Utility Companies under the Bankruptcy Code. First, the Adequate Assurance Deposit is one of the acceptable forms of adequate protection set forth in Bankruptcy Code Sections 366(b) and 366(c)(1). Accordingly, the Debtors are not seeking to bypass the limits on forms of security imposed by the Bankruptcy Code. Second, the Utility Companies may exercise their rights under Bankruptcy Code Section 366(c)(2) in accordance with the Additional Adequate Assurance Procedures. Finally, whatever rights the Utility Companies have under Bankruptcy Code Section 366(c)(3) would be preserved.

19. The Debtors maintain that the relief requested herein strikes a fair balance between the rights of the Utility Companies, on the one hand, and the Debtors' rights under the Bankruptcy Code and their continued need for the Utility Services upon which their businesses depend, on the other.

20. Similar relief to the relief requested herein has been granted by numerous courts, including this Court, subsequent to the 2005 amendments to the Bankruptcy Code. *See, e.g.*, *In re Light Tower Rentals, Inc.*, No 16-34284 (DRJ) (Bankr. S.D. Tex. Sept. 1, 2016); *In re Sandridge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. May 16, 2016); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. May 13, 2016); *In re Midstates Petroleum Co.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016); *In re RAAM Global Energy Co.*, No.

15-35615 (MI) (Bankr. S.D. Tex. Nov. 18, 2015); *In re Autoseis, Inc.*, No. 14-20130 (RSS) (Bankr. S.D. Tex. Mar. 27, 2014); *In re ATP Oil & Gas Corp.*, No. 12-36187 (MI) (Bankr. S.D. Tex. Aug. 21, 2012).

## BANKRUPTCY RULE 6004(h) SHOULD BE WAIVED

21. Additionally, to the extent that any aspect of the relief sought herein constitutes a use of property outside the ordinary course of business, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to continue to operate their businesses and preserve the value of their estates. The Debtors thus submit that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## NOTICE

22. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the agent for the Debtors' prepetition secured bank group; (c) the indenture trustee for the Senior Convertible Notes due 2017 (the "Convertible Notes"); (d) the indenture trustee for the Senior Notes due 2022 (the "Senior Notes"); (e) counsel to the ad hoc group of holders of Convertible Notes and Senior Notes; (f) the Securities and Exchange Commission; (g) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (h) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; and (i) the Utility Companies. The Debtors submit that, under the circumstances, no other or further notice is required.

**WHEREFORE,** the Debtors respectfully request that the Court enter the proposed order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: December 14, 2016
Houston, Texas

Respectfully,

/s/ John F. Higgins
John F. Higgins (TX Bar No. 09597500)
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
Brandon J. Tittle (TX Bar No. 24090436)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:  (713) 226-6000
Facsimile:  (713) 226-6295
Email: jhiggins@porterhedges.com
         jwolfshohl@porterhedges.com
         apower@porterhedges.com
         btittle@porterhedges.com

- and -

Michael E. Dillard (TX Bar No. 05866000)
**LATHAM & WATKINS LLP**
811 Main Street, Suite 3700
Houston, TX 77002
Telephone:  (713) 546-7414
Facsimile:  (713) 546-5401
Email: michael.dillard@lw.com

- and -

David S. Heller (*pro hac vice* admission pending)
Josef S. Athanas (*pro hac vice* admission pending)
Caroline A. Reckler (*pro hac vice* admission pending)
Matthew L. Warren (*pro hac vice* admission pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9667
Email: david.heller@lw.com
         josef.athanas@lw.com
         caroline.reckler@lw.com
         matthew.warren@lw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

      I certify that on December 14, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                        /s/ John F. Higgins
                                                        John F. Higgins