## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
01/11/2017

| | | |
|---|---|---|
| IN RE: | § | **Chapter 11** |
| | § | |
| **STONE ENERGY CORPORATION**, *et al.*,[1] | § | **CASE NO. 16-36390** |
| | § | |
| Debtors. | § | **(Jointly Administered)** |

### FINAL ORDER (I) AUTHORIZING POSTPETITION
### USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION
### TO THE PREPETITION SECURED PARTIES, (III) MODIFYING
### THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors, as debtors-in-possession (collectively, the "**Debtors**"), pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rule 4001-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**"), and the Procedures for Complex Chapter 11 Bankruptcy Cases promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Complex Case Procedures**") seeking entry of a final order (the "**Final Order**"), among other things:

> (a)      authorizing the use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**") of Bank of America, National Association, as administrative agent (in such capacity, the "**Prepetition Administrative Agent**") for the financial institutions (the "**Prepetition Banks**," together with the Prepetition Administrative Agent and the other "Secured Parties" under the Prepetition Credit Agreement, the "**Prepetition Secured Parties**") party to the Prepetition Credit Agreement, pursuant to section 363(c) of the Bankruptcy Code, on a final basis;

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Stone Energy Corporation (5413); Stone Energy Holding, L.L.C. (3151); and Stone Energy Offshore, L.L.C. (8062). The above-captioned Debtors' mailing address is 625 E. Kaliste Saloom Road, Lafayette, Louisiana 70508.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(b)      granting adequate protection to the Prepetition Administrative Agent and the other Prepetition Secured Parties pursuant to sections 361 and 363(e) of the Bankruptcy Code to the extent of the Adequate Protection Obligations (as defined below);

(c)      modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of this Final Order;

(d)      granting adequate protection liens on claims and causes of action arising under section 549 of the Bankruptcy Code and all proceeds and property recovered in respect thereof, and all proceeds and property recovered in respect of claims and causes of action arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code or any other state or federal law (such claims and causes of action, including claims and causes of action arising under section 549 of the Bankruptcy Code, the "**Avoidance Actions**");

(e)      approving the waiver by the Debtors of any right to surcharge against the Prepetition Collateral or, except to the extent of the Carve Out (as defined below), the Adequate Protection Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law; and

(f)      approving the waiver by the Debtors of any right to assert an "equities of the case" claim against the Prepetition Secured Parties pursuant to section 552 of the Bankruptcy Code; and

due and sufficient notice of the Motion under the circumstances having been given; the Court having conducted a preliminary hearing on the Motion on December 16, 2016 (the "**Preliminary Hearing**"), and this Court having entered an interim order granting the relief sought by the Motion on an interim basis on December 20, 2016 (the "**Interim Order**"); and a final hearing having been held before the Court on January 10, 2017 (the "**Final Hearing**"); and the Court having reviewed the *Declaration of Kenneth H. Beer, Executive Vice President and Chief Financial Officer of Stone Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), the pleadings, the evidence adduced by the parties, and the representations of counsel; and upon the entire record made at the Preliminary Hearing and the Final Hearing; and the Court having considered the Budget (defined below) filed and served by the Debtors in accordance with the Complex Case Procedures; and it appearing to the

Court that granting the relief sought in the Motion on the terms and conditions contained herein is necessary and essential to enable the Debtors to preserve the value of their businesses and assets and to facilitate the reorganization of the Debtors' businesses and that such relief is fair and reasonable; and the Court finds that good and sufficient cause appears therefor and that all objections to the entry of this Final Order have been withdrawn or are overruled;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases (as defined below) and the proceedings on the Motion is allowed in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     On December 14, 2016 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief with this Court under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Chapter 11 Cases are being jointly administered under Case No. 16-36390.

C.     Without prejudice to the rights of any other party-in-interest in the Chapter 11 Cases (but subject to the limitations with respect to such rights contained in paragraphs 18, 19 and 20 of this Final Order (*Effect of Stipulations*; *Effect of Stipulations; Wetzel County*; *Limitation on Use of Collateral*)), the Debtors (i) acknowledge, (ii) admit, (iii) agree, and (iv) stipulate that:

> 1.     The Prepetition Administrative Agent, the other Prepetition Secured Parties and Stone Energy Corporation (the "**Borrower**") are parties to that certain Fourth Amended and Restated Credit Agreement dated as of June 24, 2014 (as amended, restated, supplemented or otherwise modified prior to the commencement of these Chapter 11 Cases, the "**Prepetition Credit Agreement**"). Pursuant to that certain Second Amended and Restated Guaranty dated as of June 24, 2014 (as amended, restated, supplemented or otherwise modified prior to the commencement of these Chapter 11

3

Cases, the "**Prepetition Guaranty**"), the "Guarantors" party thereto guaranteed the obligations of the Borrower pursuant to the Prepetition Credit Agreement and the other Prepetition Credit Documents (as defined below). Pursuant to, *inter alia,* that certain Third Amended and Restated Security Agreement, dated as of June 24, 2014 (together with all other mortgages, deeds of trust, pledge agreements, deposit account control agreements, blocked account control agreements or similar security documents entered into by any Debtor and the Prepetition Administrative Agent in respect of the properties owned by such Debtor and all other documentation executed in connection with any of the foregoing, each as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Security Agreements**"), the Debtors have granted a first-priority lien and security interest (the "**Prepetition Liens**") in, to, and against all of the real and personal property (including all of the oil and gas leases, rights of way, and property interests, including wells, improvements, and other property located on such oil and gas properties) described in the Prepetition Security Agreements, including, without limitation, the as-extracted collateral therefrom, the cash and noncash proceeds, receivables, and rights in and to all imbalances, joint interest billings, and payments from first party purchasers, and other rights arising from all prepetition collateral, including any cash held by the Debtors that constitutes Cash Collateral (collectively, the "**Prepetition Collateral**"), to the Prepetition Administrative Agent and the other Prepetition Secured Parties (the Prepetition Credit Agreement, the Prepetition Security Agreements, the letter of credit documentation, and any other collateral and ancillary documents executed in connection therewith, including all "Credit Documents" as defined in the Prepetition Credit Agreement, collectively, the "**Prepetition Credit Documents**"). Pursuant to the Prepetition Credit Documents, the Debtors are jointly and severally indebted and liable to the Prepetition Secured Parties for all loans, letter of credit obligations, and other obligations described therein and payable thereunder (the "**Prepetition Indebtedness**").

2.      In accordance with the terms of the Prepetition Credit Documents, all amounts payable thereunder are now fully due and payable by the Debtors. The Debtors are each jointly and severally indebted and liable to the Prepetition Administrative Agent and the other Prepetition Secured Parties for such amounts without defense, counterclaim or offset of any kind. As of the Petition Date, the Debtors were indebted and liable to the Prepetition Administrative Agent and the other Prepetition Secured Parties without defense, counterclaim or offset of any kind, for all of the Prepetition Indebtedness, comprised of the Advances (as defined in the Prepetition Credit Agreement) made by the Prepetition Banks in the aggregate principal amount of not less than $341,500,000 under the Prepetition Credit Agreement and not less than $12,469,274 in face amount of outstanding Letters of Credit issued by the Issuing Bank (each as defined in the Prepetition Credit Agreement) plus accrued and unpaid interest, indemnification obligations, obligations arising under any Specified Swap Contract or Specified Cash Management Agreement (each as defined in the Prepetition Credit Agreement), and fees and expenses (including, without limitation, the reasonable and documented fees and expenses of the Prepetition Administrative Agent's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Prepetition Credit Documents. Each of the

4

Prepetition Credit Documents is valid, binding, and subject to applicable bankruptcy law, enforceable against the Debtors in accordance with its terms.

3.     Subject in all respects to the rights of the Debtors and certain other parties pursuant to paragraph 19 below (*Effect of Stipulations; Wetzel County*), (a) pursuant to the Prepetition Credit Documents, the Prepetition Indebtedness is secured by valid, binding, perfected, enforceable, non-avoidable, first-priority liens and security interests in, to and against the Prepetition Collateral, and such liens and security interests are not subject to, pursuant to the Bankruptcy Code or other applicable law, avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment or any other challenge of any kind and (b) there exists no basis upon which the Debtors can properly challenge or avoid the validity, enforceability, priority or perfection of the Prepetition Indebtedness or the Prepetition Liens.

4.     All cash proceeds of the Prepetition Collateral, including all such cash proceeds of such Prepetition Collateral held in any of the Debtors' banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow and custodial accounts), are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. Subject to the reservations of rights set forth in paragraph C of this Final Order, all cash in the Debtors' bank accounts maintained at or controlled by the Prepetition Administrative Agent as of the Petition Date or deposited into such accounts after the Petition Date constitutes Cash Collateral, and all cash in the Debtors' bank accounts maintained at or controlled by any of the Prepetition Secured Parties are subject to valid rights of setoff of such entity.

D.     Without prejudice to the rights of any other party (but subject to the limitations thereon described in paragraphs 18 and 19 of this Final Order (*Effect of Stipulations*; *Effect of Stipulations; Wetzel County*)), each Debtor and the Debtors' estates, on their own behalf and on behalf of their past, present and future predecessors, successors, heirs and assigns, hereby forever, fully and finally, waives and releases any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against the Prepetition Administrative Agent and each of the other Prepetition Secured Parties, and each of their respective successors, assigns, agents, affiliates, representatives, attorneys and advisors, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or

under any other similar provisions of applicable state or federal law. The admissions, stipulations, agreements, and releases set forth in this Final Order are based upon and consistent with the Debtors' investigation of the Prepetition Secured Parties' liens and claims and determination that the Debtors have no claims (as defined in section 101(5) of the Bankruptcy Code), defenses, or counterclaims with respect thereto.

E.      The preservation, maintenance and enhancement of the value of the Debtors' assets are of the utmost significance and importance. The Debtors lack sufficient available sources of working capital and financing, however, to carry on the operation of their businesses without the use of Cash Collateral. Moreover, absent the ability to use Cash Collateral, the continued operation of the Debtors' businesses would not be possible.

F.      The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitute Prepetition Collateral under the Prepetition Credit Documents and are, accordingly, subject to the Prepetition Administrative Agent's and the other Prepetition Secured Parties' valid and perfected security interests.

G.      The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds and profits in their business operations which constitute Cash Collateral of the Prepetition Administrative Agent and the other Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral.

H.     The Prepetition Administrative Agent on behalf of the Prepetition Secured Parties has consented to the Debtors' use of the Cash Collateral exclusively on and subject to the terms and conditions set forth herein.

I.     The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and the Complex Case Procedures. Notice of the Final Hearing has been provided by the Debtors to: (i) the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"); (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) the Prepetition Administrative Agent and its counsel; (iv) the indenture trustee for the 2017 Senior Convertible Notes; (v) the indenture trustee for the 7.5% Senior Notes; (vi) counsel to the Consenting Noteholders; (vii) the Securities and Exchange Commission; and (viii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. Sufficient and adequate notice of the Final Hearing and the entry of this Final Order have been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9006, as required by sections 361 and 363 of the Bankruptcy Code. No other or further notice need be given for entry of this Final Order.

J.     The adequate protection provided to the Prepetition Secured Parties for any diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral from and after the Petition Date for any reason whatsoever, including, without limitation, from the use of the Cash Collateral pursuant to this Final Order, the use, sale, lease or other diminution in value of the Prepetition Collateral other than the Cash Collateral, or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the

Bankruptcy Code. The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Parties from the diminution of their respective interests in the value of the Prepetition Collateral and (ii) obtain the foregoing consents and agreements.

K.        The Debtors stipulate, and the Court finds, that in permitting the Debtors to use the Cash Collateral or in taking any other actions permitted by this Final Order, none of the Prepetition Secured Parties shall (i) have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, is used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

L.        The Debtors stipulate and the Court finds that each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to them with respect to proceeds, product, offspring or profits with respect to any of the Prepetition Collateral.

M.        Based on the record before the Court, it appears (and the Debtors and the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties have stipulated) that the terms of this Final Order, including, without limitation, as to the Debtors' use of Cash Collateral and the provision of adequate protection therefor, are fair and reasonable, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms of this Final Order were negotiated in good faith and at arm's length between the Debtors and the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties.

N.      The Court concludes that entry of this Final Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow the Debtors to preserve and maintain the value of their assets and businesses and enhance the Debtors' prospects for a successful reorganization.

Based upon the foregoing findings, stipulations and conclusions, and upon the record made before the Court at the Preliminary Hearing and Final Hearing, and good and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ON A FINAL BASIS:**

1.      <u>Motion</u>.  The Motion is granted, subject to the terms and conditions set forth in this Final Order. The Debtors shall not use any Cash Collateral except as expressly authorized and permitted herein or by subsequent order of the Court. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      <u>Use of Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, the Debtors are hereby authorized to use the Cash Collateral in accordance with the Budget (as defined below) during the period from the Petition Date through and including the Termination Date for (i) working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief subject to the terms hereof; and (ii) monthly adequate protection payments to the Building Loan Lender in an

amount not to exceed $75,000, and (iii) adequate protection payments to the Prepetition Administrative Agent and the other Prepetition Secured Parties, as provided herein.

      3.      Budget; Use of Collateral Proceeds.

      (a)     The Debtors are authorized to use Cash Collateral and pay expenses of the estate pursuant to the budget attached hereto as **Exhibit 1** (the "**Budget**"). For each four-week Budget Period (as defined below), the aggregate actual expenditures by the Debtors for Total Disbursements (as designated in the Budget, but excluding disbursements related to the Debtors' professional fees or the professional fees paid by the Debtors for any official committee or other party interest in the Chapter 11 Cases, legal fees related to litigation and adequate protection payments to the Prepetition Secured Parties (collectively, the "**Excluded Disbursements**")) shall not in any event exceed the aggregate amount budgeted therefor in the Budget for such period by more than fifteen percent (15%) of the budgeted amount (such amount, plus any permitted Carry Forward (as defined below), the "**Authorized Variance**"); *provided, however*, that the Debtors are authorized to use Cash Collateral and pay expenses of the estates for weekly budgeted items not paid through any subsequent week within a four-week period thereafter (thus authorizing the Debtors to "carry forward" projected expenses for a limited period of time) (such budgeted amounts and actual disbursements carried forward, the "**Carry Forwards**").

      (b)     The authorization granted herein is solely with respect to the use of Cash Collateral. This Final Order shall not be deemed to authorize payment of non-ordinary course budgeted expenses that otherwise require Court approval (*e.g.*, professional fees of professionals employed under section 327 of the Bankruptcy Code).

      (c)     Unless otherwise agreed to in writing by the Prepetition Administrative Agent with the consent of the "Majority Banks" (as defined in the Prepetition Credit Agreement), the Debtors shall maintain no accounts except those identified in Attachments 1 and 2 to the *Debtors' Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 345, 363, and 364, Fed. R. Bankr. P. 6003 and 6004 BLR 9013-1(b) (i) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks and Business Forms, (ii) Authorizing Continuation of Existing Investment and Deposit Practices, (iii) Authorizing Continuation of Intercompany Transactions, and (iv) Granting Superpriority Status to Postpetition Intercompany Claims* [Docket No. 7] (the "**Cash Management Motion**"). The Debtors will issue checks on their own accounts for the purpose of paying any Court-authorized prepetition obligations included in the Budget only if and when authorized by a further order of the Court, and only when due and otherwise properly payable and not otherwise addressed herein. Notwithstanding anything to the contrary in this Final Order, the Prepetition Credit Agreement, or the other applicable documents, the Debtors, the Prepetition Administrative Agent and the other Prepetition Secured Parties, and each of the "Banks" (as defined in the Cash Management Motion) hereby agree that any agreements with any such Bank shall not be terminated.

(d)     Neither the Prepetition Secured Parties' consent to the Budget nor anything else herein shall be deemed or construed as agreement by the Prepetition Secured Parties to be surcharged under section 506(c) or any other provision of the Bankruptcy Code or equitable doctrine.

4.     <u>Entitlement to Adequate Protection</u>.  The Prepetition Administrative Agent and the other Prepetition Secured Parties are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate postpetition diminution in value of the Prepetition Administrative Agent's or Prepetition Secured Party's interest in the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code from and after the Petition Date (such diminution in value, the "**Adequate Protection Obligations**"). For the avoidance of doubt, this Final Order shall be deemed to be a request by the Prepetition Secured Parties pursuant to section 363(e) of the Bankruptcy Code.

5.     <u>Adequate Protection</u>.  As adequate protection, the Prepetition Administrative Agent and the other Prepetition Secured Parties are hereby granted the following claims, liens, rights, and benefits:

(a)     <u>Section 507(b) Claim</u>.  The Adequate Protection Obligations due to the Prepetition Administrative Agent and the other Prepetition Secured Parties shall constitute allowed joint and several superpriority administrative claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising in the Chapter 11 Cases (subject and subordinate only to the Carve Out (as defined below)), including all claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings, including without limitation any chapter 7 proceeding, under the Bankruptcy Code (the "**507(b) Claims**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, claims and causes of

11

action arising under section 549 of the Bankruptcy Code and all proceeds and property recovered in respect thereof, and all proceeds and property recovered in respect of any other Avoidance Actions.

(b)     Adequate Protection Liens.   Effective as of the Petition Date, solely to the extent of the Adequate Protection Obligations and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Administrative Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Prepetition Administrative Agent for the benefit of the Prepetition Secured Parties (all property identified in clauses (i), (ii), (iii) and (iv) below being collectively referred to as the "**Adequate Protection Collateral,**" together with the Prepetition Collateral, the "**Collateral**"), subject only to the Carve Out (as defined herein) (all such liens and security interests, the "**Adequate Protection Liens**"):

(i)     First Priority on Unencumbered Property.     Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority lien and/or replacement lien on, and security interest in, all of the Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition assets of the Debtors' estates, and all products, proceeds, rents and profits thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Unencumbered Property**"), including without limitation, oil and gas properties (including "Oil and Gas Properties" as defined in the Prepetition Credit Agreement, and any as-extracted collateral, goods, fixtures and hydrocarbons), goods and other personal property, accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, swap and hedge proceeds and termination payments, servicing receivables, securities (including equity interests in Stone Energy Holding, L.L.C.), chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under section 549 Bankruptcy Code and all proceeds and property recovered in respect thereof, and all proceeds and property recovered in respect of any other Avoidance

Actions), commercial tort claims, and the proceeds of all of the foregoing;

(ii) <u>Liens Junior to Certain Existing Perfected Liens</u>.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable junior priority replacement lien on, and security interest in, all of Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clauses (i) or (iii) of this paragraph 5(b) of this Final Order), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the prepetition security interests and liens in favor of the Prepetition Administrative Agent (the "**Other Senior Liens**");

(iii) <u>Liens Senior to Certain Existing Liens</u>.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Collateral and all of the Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided* that such liens and security interests shall not prime the Other Senior Liens;

(iv) <u>Status of the Adequate Protection Claims</u>.  Subject to the Carve Out, the Adequate Protection Liens shall not be (i) subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) except as otherwise set forth in clauses (i), (ii) and (iii) of this paragraph 5(b) of this Final Order or agreed to in writing by the Prepetition Administrative Agent with the consent of the Majority Banks, subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise; *provided* that the Debtors shall not create, incur or suffer to exist any postpetition liens or security interests other than:  (i) those granted

13

pursuant to this Final Order; (ii) carriers', mechanics', operators', repairmen's, warehousemen's, or other similar liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations, surety bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business.

Notwithstanding anything contained herein to the contrary, in no event is any "Building" or "Manufactured (Mobile) Home" (each as defined in the applicable Flood Insurance Regulation (as defined below)) included in the definition of "Adequate Protection Collateral," and no such Building or Manufactured (Mobile) Home is hereby encumbered by the Adequate Protection Liens. As used herein, "**Flood Insurance Regulations**" shall mean (i) the National Flood Insurance Act of 1968 as now or hereafter in effect or any successor statute thereto, (ii) the Flood Disaster Protection Act of 1973 as now or hereafter in effect or any successor statue thereto, (iii) the National Flood Insurance Reform Act of 1994 (amending 42 U.S.C. § 4001, *et seq.*), as the same may be amended or recodified from time to time, and (iv) the Flood Insurance Reform Act of 2004 and any regulations promulgated thereunder.

(c)     Carve Out.  As used in this Final Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) allowed (regardless of whether allowed by this Court before or after delivery of a Carve Out Trigger Notice), accrued and unpaid fees and out-of-pocket expenses ("**Allowed Professional Fees**") of each professional retained by order of the Court by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and any official committee appointed in the Chapter 11 Cases (each, a "**Committee**") pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**," and, together with the Debtor Professionals, the "**Estate Professionals**") incurred on or prior to the date on which the Prepetition Administrative Agent delivers a Carve Out Trigger Notice in aggregate accrued amounts for each such Estate Professional not in excess of the amounts set forth in the Budget for such Estate Professional through such date; and (iv) Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the Prepetition Administrative Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"). For purposes of the foregoing, the term "**Carve Out Trigger Notice**" shall mean a written notice delivered by electronic mail (or other electronic means) by the Prepetition Administrative Agent to the Debtors, their counsel, the U.S. Trustee, and counsel to any Committee (if appointed), which notice may be delivered following the occurrence and during the continuation of a Termination Event (as defined herein), stating that the Post-

Carve Out Trigger Notice Cap has been invoked. Nothing in this Final Order shall be construed to impair the ability of any party in interest to object to any fees, expenses, reimbursements or compensation sought by any Estate Professional.

(d)     Payment of Carve Out On or After the Termination Declaration Date. The day on which a Carve Out Trigger Notice is given by the Prepetition Administrative Agent to the Debtors shall be the "**Termination Declaration Date.**" Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding or payment of the Carve Out from cash on hand or other available cash shall not reduce the Prepetition Indebtedness secured by the Adequate Protection Collateral.

6.     <u>Additional Adequate Protection</u>.  As additional adequate protection:

(a)     <u>Payments</u>:  The Debtors are authorized and directed to pay to the Prepetition Administrative Agent for the ratable benefit of the Prepetition Secured Parties, adequate protection payments on the last business day of each calendar month after the entry of this Final Order, in each case, in an amount equal to all accrued and unpaid prepetition or postpetition interest at the non-default contract rate, fees, and costs due and payable under the Prepetition Credit Agreement. For the avoidance of doubt, all payments of interest pursuant to this paragraph 6(a) shall be without prejudice to the rights of the Prepetition Administrative Agent and the other Prepetition Secured Parties to assert a claim for payment of additional interest (including default interest) at any other rates in accordance with the Prepetition Credit Agreement.

(b)     <u>Fees and Expenses</u>:  The Debtors are authorized and directed to pay, in accordance with this paragraph 6(b) of this Final Order, all pre- and postpetition reasonable and documented fees and expenses, when due, of the Prepetition Administrative Agent, the other Prepetition Secured Parties, and each of their respective advisors, including, without limitation, the fees and expenses of (i) O'Melveny & Myers LLP, as counsel to the Prepetition Administrative Agent, (ii) Winstead PC, local counsel to the Prepetition Administrative Agent, (iii) Goodwin & Goodwin, LLP, special West Virginia counsel to the Prepetition Administrative Agent, and (iv) RPA Advisors, LLC, as financial advisor to the Prepetition Administrative Agent, incurred on or after the Petition Date. The payment of the fees, expenses and disbursements set forth in this paragraph 6(b) of this Final Order shall be made within ten (10) business days after the receipt by the Debtors, counsel to the Consenting Noteholders and the U.S. Trustee (the "**Review Period**") of invoices thereof (the "**Invoiced Fees**") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; *provided* that the Debtors and the U.S. Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees, and (ii) the Debtors or the U.S. Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Administrative Agent and counsel to the Prepetition Administrative Agent of any hearing

on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees. To the extent that the Court, after notice and a hearing, enters an order sustaining any such specific objections by the Debtors or the U.S. Trustee to the Disputed Invoiced Fees, any prior payment of the Invoiced Fees in the amount disallowed shall be recharacterized as payments of principal under the Prepetition Credit Agreement or payment on account of additional incurred professional fees, as applicable, thereby reducing any claims on account of such principal or for future payment of fees, whichever is applicable. Within two (2) business days of the entry of this Final Order, the Debtors shall pay any accrued but unpaid, reasonable and documented fees, expenses and disbursements (including, but not limited to, contractual agency fees and the reasonable fees, disbursements, and other charges of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Prepetition Administrative Agent under the Prepetition Credit Agreement before the Petition Date pursuant to the applicable invoices delivered to the Debtors.

(c)     Other Covenants:  The Debtors shall maintain their cash management arrangements in a manner consistent with the interim and final orders granting the Cash Management Motion. As set forth more particularly in paragraph 27 of this Final Order (*Asset Sales*), and subject to the exceptions set forth therein, the Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of the Court to do any of the foregoing, without the prior consent of the Prepetition Administrative Agent at least five (5) business days prior to the date on which the Debtors seek the authority of the Court for such use, sale or lease. The Debtors shall comply with the covenants contained the Prepetition Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Adequate Protection Collateral.

(d)     Reporting:  The Debtors shall comply with the reporting requirements set forth in the Prepetition Credit Agreement (including timely provision of engineering reports and reserve reports to the Prepetition Administrative Agent as required under Section 5.06 of the Prepetition Credit Agreement).  In addition, the Debtors shall provide the following additional reporting to the Prepetition Administrative Agent, with a copy to the Consenting Noteholders and the U.S. Trustee:

> (i)     on or before 12:00 p.m. (prevailing New York time) on the last Tuesday (or, if such Tuesday is not a business day, the immediately preceding business day) of each rolling four-week period (commencing with the four-week period ending January 13, 2017) (each such four-week period, a "**Budget Period**"), an updated rolling 13-week cash flow forecast of the Debtors and their subsidiaries substantially in the form of the Budget (each such forecast, in the event it proposes to modify the Budget then in effect, a "**Proposed Budget**"), which Proposed Budget, upon written approval by the Prepetition Administrative Agent with the consent of the Majority Banks, shall become the Budget effective as of the first Monday following such written approval (the "**Budget Effective Date**"), and each such Budget shall run from its

16

respective effective date through the Sunday prior to the Budget Effective Date of the next Budget, *provided*, *however*, that unless and until the Prepetition Administrative Agent with the consent of the Majority Banks shall have approved in writing any Proposed Budget or any other proposed modification to the Budget then in effect, the Debtors shall still be subject to and be governed by the terms of such Budget then in effect in accordance with the terms of this Final Order;

(ii)   on or before 12:00 p.m. (prevailing New York time) on the first Thursday (or, if such Thursday is not a business day, the immediately preceding business day) following each rolling four-week Budget Period (commencing with the four-week period ending January 13, 2017), a four-week report of receipts and disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior four-week Budget Period, which report and reconciliation shall be presented in the same form as the Budget (*i.e.*, with directly corresponding line items and variances for each on a line item by line item basis) and otherwise in form and detail reasonably satisfactory to the Prepetition Administrative Agent;

(iii)   on or before 12:00 p.m. (prevailing New York time) on each Thursday of each calendar week (or, if such Thursday is not a business day, the immediately preceding business day), (1) a weekly report of receipts and disbursements, which report shall be presented in the same form as the Budget (*i.e.*, with directly corresponding line items) and (2) a statement setting forth in reasonable detail the cash balance for each deposit account of the Debtors as of the previous Friday;

(iv)   the Debtors will provide, and/or make themselves available to representatives of the Prepetition Administrative Agent to discuss, qualitative explanations with respect to the foregoing;

(v)   detailed accounts payable aging for the Debtors as of month-end to be provided within twenty (20) days after the last day of each calendar month;

(vi)   detailed accounts receivable aging for the Debtors as of month-end to be provided within twenty (20) days after the last day of each calendar month;

(vii)   (A) preliminary unaudited income statements (including reporting of revenues and expenses) and (B) funded debt balances, in each case prepared consistent with the Debtors' existing and past reporting practices (including with respect to compliance or non-

compliance with GAAP in such internal reports), to be provided within thirty (30) days of the last day of each fiscal month for the immediately preceding month;

(viii)   on or before 12:00 p.m. (prevailing New York time) on the Thursday of each calendar week (or, if such Thursday is not a business day, the immediately preceding business day), a report of all distributions in excess of $100,000 on an individual basis, on account of prepetition obligations to vendors (not including working interest distributions or royalties), for the immediately preceding week;

(ix)   copies of all reports provided to any Committee, the U.S. Trustee or any other party in interest in the Chapter 11 Cases; and

(x)   such other reports and information as the Prepetition Administrative Agent may reasonably request.

(e)   All royalty payments received by the Debtors and/or coming due and payable to all royalty holders postpetition shall be timely and promptly paid to such royalty holders either directly or by first party purchasers in accordance with the applicable division orders, unless otherwise subject to suspension by the Debtors in the ordinary course as an operator. For the avoidance of doubt, all such royalty payments received by the Debtors and/or payable by the Debtors shall include the satisfaction or disbursement of royalties by netting, setoff, or otherwise.

(f)   In addition to, and without limiting, whatever rights to access the Prepetition Administrative Agent and the other Prepetition Secured Parties have under the Prepetition Credit Documents, upon reasonable prior written notice, at reasonable times during normal business hours, and otherwise not to be unreasonably withheld, the Debtors shall permit representatives, advisors, agents, and employees of the Prepetition Administrative Agent (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors and counsel.

7.   Termination. The Debtors' right to use the Cash Collateral pursuant to this Final Order shall terminate (the date of any such termination, the "**Termination Date**") upon the occurrence of a Termination Event (as defined below) without notice to the Debtors or any other parties in interest or a court proceeding, *provided* that, other than with respect to the Termination Events identified in clauses (d), (o), (p), (q), (t) or (u) below, the Termination Date shall occur on the date that is the third (3rd) business day following the delivery of a written notice (any such

notice, a "**Default Notice**," and any such three-business-day period of time following delivery of a Default Notice, the "**Default Notice Period**") by the Prepetition Administrative Agent to the Debtors, Latham & Watkins LLP, Porter Hedges LLP, the U.S. Trustee, counsel to the Consenting Noteholders, and counsel to any Committee of the occurrence of any of the events set forth below (other than those events contemplated in clauses (d), (o), (p), (q), (t) or (u)) unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or such occurrence is waived by the Prepetition Administrative Agent in its sole discretion, *provided further* that, (X) during the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in accordance with the terms of this Final Order and (Y) nothing contained herein shall prohibit or restrict the Debtors from seeking further relief from this Court regarding the use of Cash Collateral following the delivery of any Default Notice (the events set forth in clauses (a) through (v) below are collectively referred to herein as the "**Termination Events**"):

(a)      failure of the Debtors to make any payment under this Final Order to the Prepetition Administrative Agent or any Prepetition Secured Party after such payment becomes due;

(b)      failure of the Debtors to (i) comply with any material provision of this Final Order; (ii) comply with any other covenant or agreement specified in this Final Order (other than those described in clause (i) above) in any material respect; or (iii) unless waived in writing by the Prepetition Administrative Agent with the consent of the Majority Banks, comply with clause (a) of paragraph 3 of this Final Order (*Budget; Use of Collateral Proceeds*);

(c)      the Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than (i) those granted pursuant to this Final Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, surety bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Prepetition Credit Documents;

(d)     an order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order without the written consent of the Prepetition Administrative Agent (with the consent of the Majority Banks);

(e)     the Debtors' commencing, or participating in furtherance of, any solicitation of any chapter 11 plan unless it is a chapter 11 plan that the Prepetition Administrative Agent and the Required Consenting Banks shall have expressly consented to in writing;

(f)     the Bankruptcy Court shall terminate or reduce the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(g)     the occurrence of the "Termination Date" under the Restructuring Support Agreement;

(h)     there shall be a breach by any Debtor of any material provisions of this Final Order, or the Final Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment;

(i)     (A) the entry of an order in the Chapter 11 Cases charging any of the Prepetition Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or section 506(c) of the Bankruptcy Code against any of the Prepetition Secured Parties under which any person takes action against the Prepetition Collateral or Adequate Protection Collateral or that becomes a final non-appealable order, or (B) the commencement of other actions that are materially adverse to any of the Prepetition Secured Parties or their respective rights and remedies under the Prepetition Credit Documents in the Chapter 11 Cases;

(j)     the entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $20 million;

(k)     the entry of any postpetition judgment against any Debtor in excess of $20 million;

(l)     the Debtors shall at any time from the Petition Date through and including February 3, 2017, fail to hold unrestricted cash or cash equivalents in an aggregate amount of not less than $90 million and at any time thereafter fail to hold unrestricted cash or cash equivalents in an aggregate amount of not less than $70 million;

(m)     the payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties, unless consented to in writing by the Prepetition Administrative Agent (with the consent of the Majority Banks acting in their reasonable discretion);

(n)    unless agreed to in writing by the Prepetition Administrative Agent with the consent of the Majority Banks, the existence of any claims or charges, or the entry of any order of the Bankruptcy Court authorizing any claims or charges, other than as permitted under this Final Order or the *Order (A) Authorizing the Debtors to Enter into and Perform Postpetition Hedging Transactions Secured Under the Prepetition Credit Agreement, (B) Providing Administrative Expense Status to Authorized Postpetition Hedging Transactions, and (C) Modifying the Automatic Stay* [Docket No. 210] (the "**Hedging Order**"), entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the Prepetition Indebtedness, or there shall arise or be granted by the Bankruptcy Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code (other than the Carve Out), including the 507(b) Claims, or (ii) subject to the Other Senior Liens, any lien on the Prepetition Collateral or Adequate Protection Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in the Prepetition Credit Documents or in this Final Order, whichever Order is in effect;

(o)    the Court shall have entered an order dismissing any of the Chapter 11 Cases;

(p)    the Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(q)    the Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by the Prepetition Administrative Agent with the consent of the Majority Banks;

(r)    any Debtor shall support (by way of any motion or other pleading or paper filed with the Court or any other writing to another party in interest executed by or on behalf of any such Debtor) any other person's opposition to any motion made in the Court by the Prepetition Secured Parties seeking confirmation of the amount of the Prepetition Secured Parties' claims or the validity or enforceability of the liens in favor of the Prepetition Secured Parties;

(s)    any proceeding shall be commenced by any Debtor seeking, or otherwise consenting to, (i) the invalidation, subordination, or other challenging of the Prepetition Liens, 507(b) Claims or Adequate Protection Liens or (ii) any relief under section 506(c) of the Bankruptcy Code with respect to any Collateral, including Cash Collateral;

(t)    (i) any provision of this Final Order shall cease to be valid and binding for any reason or (ii) the Debtors shall seek any modification of this Final Order that is adverse to the Prepetition Secured Parties without the prior written consent of the Prepetition Administrative Agent (with the consent of the Majority Banks);

(u)   the expiration of the Budget, unless a supplemental Budget has been agreed to upon the written approval by the Prepetition Administrative Agent (with the consent of the Majority Banks); and

(v)   the payment of any salaries, wages, benefits, employee bonuses or supplemental compensation other than as authorized in the order granting the "first day" employee motion or any other order of the Court.

8.   <u>Remedies upon the Termination Date</u>.  Upon the occurrence of the Termination Date, (i) the Adequate Protection Obligations shall become due and payable and (ii) the Prepetition Administrative Agent and each of the other Prepetition Secured Parties may seek emergency relief from the automatic stay (and an emergency hearing will be promptly scheduled by the Court) to (A) setoff amounts in any account of the Debtors maintained with the Prepetition Administrative Agent or such Prepetition Secured Party to the extent necessary for payment of the Prepetition Obligations and the Adequate Protection Obligations and (B) exercise all rights and remedies against the Prepetition Collateral (including Cash Collateral) and Adequate Protection Collateral provided for in this Final Order, the Prepetition Credit Documents and applicable law, including without limitation foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Prepetition Obligations and the Adequate Protection Obligations. During the Default Notice Period (if applicable), except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (i) necessary to preserve the Debtors' going concern value or (ii) necessary to contest in good faith whether a Termination Event has occurred and/or is continuing.  The delay or failure of the Prepetition Administrative Agent or the other Prepetition Secured Parties to exercise rights and remedies under the Prepetition Credit Documents, this Final Order or applicable law shall not constitute a waiver of their respective rights thereunder or otherwise. In no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect

to the Collateral (provided that such Collateral is subject to valid, binding, perfected, enforceable, non-avoidable liens and security interests in, to and against such Collateral in favor of the Prepetition Secured Parties, subject to paragraphs 18 and 19 of this Final Order (*Effect of Stipulations*; *Effect of Stipulations; Wetzel County*)).

9.     <u>Application of Collateral Proceeds</u>.  Subject to entry of an order of the Court to the contrary, after the expiration of the Default Notice Period, if applicable, following the occurrence of a Termination Event, the Debtors shall be authorized and directed to remit all collections, remittances and proceeds that constitute or are proceeds of Prepetition Collateral, other than Prepetition Collateral that is the subject of a pending Challenge, to the Prepetition Administrative Agent, for the benefit of the Prepetition Secured Parties. Subject to entry of an order of the Court to the contrary, the automatic stay provisions of section 362 of the Bankruptcy Code shall be modified to permit the Prepetition Secured Parties to retain and apply all collections, remittances and proceeds of the Prepetition Collateral, other than Prepetition Collateral that is the subject of a pending Challenge, and Adequate Protection Collateral, subject to and in accordance with this Final Order (including the Carve Out with respect to Adequate Protection Collateral), to the Prepetition Indebtedness in accordance with the provisions of the Prepetition Credit Documents.

10.     <u>Limitation on Charging Expenses Against Collateral</u>.  No expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral, the Adequate Protection Collateral (except to the extent of the Carve Out), the Prepetition Administrative Agent or the other Prepetition Secured Parties pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any

similar principle of law or equity, without the prior written consent of the affected Prepetition Secured Party, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Administrative Agent or any of the other Prepetition Secured Parties; *provided, however*, that nothing in this Final Order shall prohibit or restrict the Debtors from seeking further relief from this Court regarding the use of Cash Collateral following the delivery of any Default Notice. Neither the Prepetition Secured Parties' consent to the Budget nor anything else herein shall be deemed or construed as agreement by the Prepetition Secured Parties to be surcharged under section 506(c) or any other provision of the Bankruptcy Code or equitable doctrine.

11.     <u>Payments Free and Clear</u>.  Except to the extent of the Carve Out, any and all payments or proceeds remitted to the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties pursuant to the provisions of this Final Order or any subsequent order of the Court shall be irrevocable (subject to paragraph 17 of this Final Order (*Preservation of Rights Granted Under This Final Order*)), received free and clear of any claim, charge, assessment, or other liability, including without limitation any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

12.     <u>Bankruptcy Code Section 552(b)</u>.  The Prepetition Administrative Agent and each of the other Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Administrative Agent or the other Prepetition Secured Parties with respect to (i) proceeds, products, offspring, or profits

of any of the Prepetition Collateral or the Adequate Protection Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Adequate Protection Collateral.

13. <u>All Parties' Reservation of Rights</u>. All parties reserve their rights to argue that, to the extent that any cash payment of interest, fees or expenses as adequate protection to the Building Loan Lender or to the Prepetition Administrative Agent or the other Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code or on any other basis, such payment should be recharacterized and applied as payments of principal owed under the Building Loan or the Prepetition Credit Documents, as applicable, or such other equitable relief should be granted to protect the Debtors' estates in the event that recharacterization does not restore the effect of such payments; *provided* that the Building Loan Lender, the Prepetition Administrative Agent and the Prepetition Secured Parties reserve their respective rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization, application or other request for relief.

14. <u>Reservation of Rights of the Prepetition Secured Parties</u>. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Administrative Agent and the other Prepetition Secured Parties hereto is without prejudice to the right of the Prepetition Administrative Agent and the other Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, *provided* that any such request for different or additional adequate protection shall be without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the rights of the Prepetition Administrative Agent or the other Prepetition Secured Parties under the Prepetition Credit Documents or under equity or law, and the Prepetition

Administrative Agent and the other Prepetition Secured Parties expressly reserve all of their rights and remedies whether now existing or hereafter arising under the Prepetition Credit Documents and/or equity or law in connection with all Termination Events and Defaults and Events of Default (as defined in the Prepetition Credit Documents and whether arising prior to or after the Petition Date).

15.    _Modification of Automatic Stay_.    The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and the Prepetition Administrative Agent and each of the other Prepetition Secured Parties to accomplish the transactions contemplated by this Final Order.

16.    _Perfection of Adequate Protection Liens_.

(a)    The Prepetition Administrative Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to each hereunder, respectively. Whether or not the Prepetition Administrative Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Final Order. If the Prepetition Administrative Agent determines to file or execute any financing statements, agreements, notice of liens or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the Prepetition Administrative Agent, and the automatic stay shall be modified to allow such filings.

(b)    A certified copy of this Final Order may, in the discretion of the Prepetition Administrative Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; _provided_ that, notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of this order.

(c)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or

(ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the Prepetition Credit Documents or this Final Order.

17.   <u>Preservation of Rights Granted Under This Final Order</u>.

(a)   Except as expressly provided in this Final Order, the Hedging Order or as otherwise agreed to in writing by the Prepetition Administrative Agent (with the consent of the Majority Banks), no claim or lien having a priority senior to or *pari passu* with those granted by this Final Order to the Prepetition Administrative Agent and the other Prepetition Secured Parties shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)   Notwithstanding any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the 507(b) Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall continue in full force and effect and, except as agreed to in writing by the Prepetition Administrative Agent (with the consent of the Majority Banks), shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such 507(b) Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)   If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Administrative Agent of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral (including Cash Collateral) or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Prepetition Administrative Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Administrative Agent and the other Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted herein and to the

protections afforded in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral (including the Cash Collateral) and all Adequate Protection Obligations.

(d)     Subject to paragraph 18 of this Final Order (*Effect of Stipulations*), the adequate protection payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Chapter 11 Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)     Except as expressly provided in this Final Order, the Adequate Protection Obligations, the 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Prepetition Administrative Agent and the other Prepetition Secured Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Final Order shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the Prepetition Administrative Agent and the other Prepetition Secured Parties granted by the provisions of this Final Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

18.     Effect of Stipulations. The Debtors have admitted, stipulated and agreed to the various stipulations and admissions contained in this Final Order, including without limitation, the stipulations and admissions included in paragraph C, which stipulations and admissions shall be binding upon the Debtors and any successors thereto in all circumstances. The stipulations and admissions contained in this Final Order, including without limitation, in paragraph C of this Final Order, shall also be binding upon all other parties in interest, including any Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), for all purposes unless (a) such party (subject in all respects to paragraph 19 of this Final Order (*Effect of Stipulations; Wetzel County*)) has properly filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to the limitations

28

contained herein, including, without limitation, in paragraph 20 of this Final Order (*Limitation on Use of Collateral*)), on or before the date that is seventy-fifth (75th) day from the date of entry of this Final Order, or, in the case of any Committee, the date that is the sixtieth (60th) day from the date of the appointment of such Committee (such date as applicable, the "**Investigation Termination Date**") (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Indebtedness or the liens on the Prepetition Collateral securing the Prepetition Indebtedness or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Secured Parties on behalf of the Debtors' estates (each such adversary proceeding or contested matter, and all claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Secured Parties subject thereto, a "**Challenge**"), and (b) the Court rules in favor of the plaintiff sustaining any such Challenge; *provided* that, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date. If no Challenge is timely commenced on or before the Investigation Termination Date, without further order of the Court, (i) the claims, liens and security interests of the Prepetition Secured Parties shall be deemed to be finally allowed for all purposes in the Chapter 11 Cases and any successor case and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise, and (ii) the Debtors and their estates shall be deemed to have relinquished, released and waived any and all claims or causes of action against the Prepetition Secured Parties with respect to the Prepetition Credit Documents or any related transactions. Notwithstanding anything to the contrary in this Final Order, if no Challenge is timely commenced, the Debtors' stipulations shall be binding on the Debtors' estates, any Committee and all parties in interest. If a Challenge is timely commenced, the Debtors' stipulations shall be binding on the Debtors' estates and all parties in

interest except to the extent such stipulations are specifically challenged in such Challenge, as and when originally filed (ignoring any relation back principles); *provided* that if and to the extent all Challenges to a particular stipulation are withdrawn, denied or overruled by a final non-appealable order, such stipulation also shall be binding on the Debtors' estates and all parties in interest. In the event the Debtors, any Committee or any other party in interest initiates an investigation of potential claims against any party other than the Prepetition Secured Parties, the Prepetition Secured Parties shall have the right to fully participate in such investigation.

19.     <u>Effect of Stipulations; Wetzel County</u>. Notwithstanding anything to the contrary herein (but subject to the limitations of paragraph 20 (*Limitation on Use of Collateral*)), upon the earlier of (i) any Termination Date (as defined in the Restructuring Support Agreement) or (ii) the termination of the Restructuring Support Agreement by the Required Consenting Banks (as defined in the Restructuring Support Agreement), each of the Debtors, each party to the Restructuring Support Agreement (other than any Consenting Noteholder to the extent such Consenting Noteholder was in material breach of the Restructuring Support Agreement as of the date of its termination, provided that nothing in this parenthetical shall prevent such Consenting Noteholder from benefitting from a successful Supplemental Challenge (as defined below)) and any Committee shall have a period of sixty (60) days from such date (the 60th day following such date the "**Supplemental Investigation Termination Date**") to challenge the validity, enforceability, priority or perfection of any asserted security interests or liens alleged to secure the Prepetition Indebtedness under the Prepetition Credit Documents or otherwise with respect to the Debtors' property interests located in Wetzel County, West Virginia (the "**Prepetition Wetzel County Liens**" and each such adversary proceeding or contested matter, and all claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Secured

Parties with respect to the Prepetition Wetzel County Liens, a "**Supplemental Challenge**")). If no Supplemental Challenge is commenced on or before the Supplemental Investigation Termination Date, the Debtors' stipulations and admissions in paragraph C with respect to the Prepetition Wetzel County Liens shall be binding upon the Debtors and any successors thereto in all circumstances. If no Supplemental Challenge is commenced on or before the later of (a) the Investigation Termination Date or (b) the Supplemental Investigation Termination Date, the Debtors' stipulations and admissions in paragraph C with respect to the Prepetition Wetzel County Liens shall be binding upon each party to the Restructuring Support Agreement and any Committee. If a Supplemental Challenge is timely commenced prior to the Supplemental Investigation Termination Date, the Debtors' stipulations and admissions in paragraph C with respect to the Prepetition Wetzel County Liens shall be binding on each of the Debtors, each party to the Restructuring Support Agreement and any Committee except to the extent such stipulations are specifically challenged in such Supplemental Challenge, as and when originally filed (ignoring any relation back principles); *provided* that if and to the extent all Supplemental Challenges to a particular stipulation are withdrawn, denied or overruled by a final non-appealable order, such stipulation also shall be binding on each of the Debtors, each party to the Restructuring Support Agreement and any Committee. Nothing in this Final Order (a) vests or confers on any person, including a Committee or a Consenting Noteholder, standing or authority to pursue any Supplemental Challenge belonging to the Debtors or their estates or (b) restricts or prohibits any person, including a Committee or a Consenting Noteholder (other than any Consenting Noteholder to the extent such Consenting Noteholder was in breach of the Restructuring Support Agreement as of the date of its termination), from seeking standing or authority to pursue any Supplemental Challenge belonging to the Debtors or their estates.

20.     Limitation on Use of Collateral.   The Debtors shall use the proceeds of the Prepetition Collateral solely as provided in this Final Order. Notwithstanding anything herein or in any other order of the Court to the contrary, no Cash Collateral may be used to:  (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the Prepetition Indebtedness, or the liens or claims granted under this Final Order or the Prepetition Credit Documents; (ii) assert any Challenge against the Prepetition Administrative Agent or any of the other Prepetition Secured Parties or any of their respective agents, affiliates, representatives, attorneys or advisors; (iii) seek to modify any of the rights granted to the Prepetition Administrative Agent or the other Prepetition Secured Parties hereunder, or (iv) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court; *provided* that, notwithstanding anything to the contrary herein, no more than $150,000 of the Carve Out in the aggregate may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Indebtedness or the liens on the Prepetition Collateral or investigate any Challenges or other causes of action against the Prepetition Administrative Agent or any of the other Prepetition Secured Parties; *provided, further*, that notwithstanding anything to the contrary herein, no more than $200,000 of the Carve Out in the aggregate may be used by the Debtors to investigate the validity, enforceability, priority or perfection of the Prepetition Wetzel County Liens.

21.     Binding Effect; Successors and Assigns.   The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including without limitation, the Prepetition Administrative Agent and the other Prepetition Secured Parties, any Committee and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estate of any Debtor, any

32

examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Administrative Agent, the other Prepetition Secured Parties and the Debtors and their respective successors and assigns, *provided* that, except to the extent expressly set forth in this Final Order, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor. For all adequate protection and stay relief purposes throughout the Debtors' Chapter 11 Cases, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such request will survive termination of this Final Order.

22.   <u>Limitation of Liability</u>.  In permitting the use of the Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Prepetition Credit Documents or any applicable law, the Prepetition Secured Parties shall not (i) have liability to any third party or be deemed to be in control of the operations of any of the Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors. Furthermore, nothing

in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

23.     Affirmation of Liens.  Without prejudice to the rights of any other party (but subject to the limitations described herein in paragraphs 18, 19 and 20 of this Final Order (*Effect of Stipulations*; *Effect of Stipulations; Wetzel County*; *Limitation on Use of Collateral*), and solely to the extent consistent with paragraph C hereof, (a) the Debtors are hereby authorized and deemed to ratify, reaffirm and adopt the Prepetition Credit Documents, including the validity, extent, priority, perfection and enforceability of the liens, liabilities, and obligations to the Prepetition Administrative Agent and the other Prepetition Secured Parties incurred thereunder and the liens, security interests and mortgages granted to the Prepetition Administrative Agent and the other Prepetition Secured Parties thereunder and (b) the validity, extent, priority, perfection and enforceability of the Prepetition Administrative Agent's and the other Prepetition Secured Parties' prepetition claims, liens, mortgages and security interests in the Debtors' assets shall not be subject to invalidation, avoidance, subordination, or other challenge by the Debtors, and in furtherance thereof the Debtors hereby release, waive and affirmatively agree not to allege or otherwise pursue any or all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that they may have to contest (i) any Defaults or Events of Default (as such terms, or similar terms are defined in the Prepetition Credit Documents) that were or could have been declared by the Prepetition Administrative Agent and the other Prepetition Secured Parties as of the Petition Date and (ii) the amount of the Debtors'

34

indebtedness to the Prepetition Administrative Agent and the other Prepetition Secured Parties as of the Petition Date.

24.     <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

25.     <u>Proofs of Claim</u>.  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or successor cases, and the Debtors' stipulations in paragraph C herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s). Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or successor cases shall not apply to the Prepetition Administrative Agent or the other Prepetition Secured Parties with respect to the Prepetition Indebtedness. Notwithstanding the foregoing, the Prepetition Administrative Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable Prepetition Credit Documents; *provided*, that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

26.   <u>Credit Bidding</u>.   In accordance with Section 8.9 of the Prepetition Credit Agreement, the Prepetition Administrative Agent (at the direction of the Majority Banks) shall have the right to credit bid, up to the full amount of the Prepetition Secured Parties' secured claims in any sale of the Prepetition Collateral or Adequate Protection Collateral as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

27.   <u>Asset Sales</u>.   All sales and other dispositions (including casualty and condemnation events) of Collateral other than dispositions in the ordinary course of business and dispositions outside the ordinary course of business that have a value of less than $100,000 on a net basis (collectively, "**Collateral Sales**"), unless otherwise agreed to in writing by the Prepetition Administrative Agent (with the consent of the Majority Banks), shall be in exchange for 100% cash consideration. All net cash proceeds of any Collateral Sales, other than the Appalachia Sale (as defined in the Plan), shall be paid to the Prepetition Administrative Agent and applied in accordance with the Prepetition Credit Documents. All proceeds of the Appalachia Sale shall be placed into an escrow account and remain in such account until further order of this Court or the effective date of the Plan; *provided*, that, for the avoidance of doubt, all liens, claims, interests and encumbrances will attach to such proceeds to the same extent and with the same priority as existed prior to consummation of the Appalachia Sale. Any proposed property exchange with respect to Collateral that is not in exchange for 100% cash consideration (other than as set forth above) shall be subject to the Prepetition Administrative Agent's prior written consent (with the consent of the Majority Banks). Except for the Appalachia Sale, the Debtors shall not use, sell or lease any assets outside the ordinary course of business that have a

36

value in excess of $100,000 on a net basis, or seek authority of the court to do any of the foregoing, without the prior consent of the Prepetition Administrative Agent at least five (5) business days prior to the date on which the Debtors seek the authority of the court for such use, sale or lease.

28.     Reservation of Rights with Respect to the United States of America. Notwithstanding anything to the contrary in this Final Order, nothing in this Final Order (including, for the avoidance of doubt, paragraphs C, 5(b), 16, 18 and 19 of this Final Order) shall (i) be construed as a consent by the United States of America (the "**United States**") to any Prepetition Liens or Adequate Protection Liens against any federal oil and gas leases, grants of rights-of-use and easement or grants of pipeline rights-of-way (collectively, the "**Federal Leases**") granted pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* (the "**OCSLA**"), or (ii) limit, impact or affect in any way (A) any rights of the United States to setoff or recoupment to the extent permitted under applicable law, including, without limitation, section 553 of the Bankruptcy Code, or (B) any rights solely of the United States arising under the OCSLA, 41 U.S.C. § 6305(a) or title 30 of the Code of Federal Regulations including, without limitation, to challenge the enforceability of Prepetition Liens and Adequate Protection Liens against Federal Leases solely to the extent such Prepetition Liens and Adequate Protection Liens relate to the United States, all such rights under clauses (ii)(A) and (ii)(B) of this paragraph 28, if any, are expressly reserved. Any and all rights, claims and defenses of the Debtors, the Prepetition Administrative Agent, the Prepetition Secured Parties and/or any other party in interest with respect to any such rights of the United States are expressly reserved.

29.     Headings. The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

30.     Jurisdiction.  The Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

31.     Controlling Effect of Final Order.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Final Order shall control to the extent of such conflict.

**SIGNED:  January 10, 2017.**

_____

**MARVIN ISGUR**
**UNITED STATES BANKRUPTCY JUDGE**