**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | * | Case No.   16-36390 (MI) |
| | * | |
| STONE ENERGY CORPORATION, et al. | * | Chapter 11 |
| | * | |
| Debtors. | * | (Jointly Administered) |

**LIMITED OBJECTION OF WESTERNGECO, L.L.C.**
**TO THE DEBTORS' SECOND AMENDED**
**JOINT PREPACKAGED PLAN OF REORGANIZATION**

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

WesternGeco, L.L.C. ("WesternGeco"), a party-in-interest herein, files this Limited Objection (the "Objection") to the Second Amended Joint Prepackaged Plan of Reorganization of Stone Energy Corporation and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [Rec. Doc. 215] (the "Second Amended Plan"), and respectfully shows as follows:

BACKGROUND AND FACTS

1.      WesternGeco is a geophysical services company that is in the business, *inter alia*, of licensing comprehensive worldwide reservoir imaging, monitoring, and development services, including but not limited to 2D, 3D and 4D (time-lapse) seismic surveys and multicomponent and electromagnetic surveys, to clients for the purpose of providing accurate measurements of subsurface geology for potential oil and gas exploration and/or production and other uses.

2.      The Debtors[1] are an integrated independent oil and natural gas company engaged in the acquisition, exploration, exploitation, development and operation of oil and gas properties in the Gulf of Mexico.

*i)      The Seismic License Agreements*

3.      WesternGeco is a party to a number of seismic licenses, supplemental agreements,

---

[1] The Debtors include Stone Energy Corporation, Stone Energy Holdings, L.L.C., and Stone Energy Offshore, L.L.C.

and other related agreements (the "Seismic License Agreements") with one or more of the Debtors.

4.      Among other things, on or about December 12, 2002 but effective February 14, 2002, WesternGeco entered into a Master License Agreement For Multiclient Seismic Data (the "WesternGeco Master License Agreement") with one or more of the Debtors, pursuant to which the Debtors were granted a non-exclusive license to use on a limited and restricted basis certain proprietary geophysical information and data (the "Seismic Data") as from time to time was ordered by the Debtors pursuant to Supplemental Agreements issued in accordance with the terms and conditions of the WesternGeco Master License Agreement.  A copy of the WesternGeco Master License Agreement is attached hereto and made a part hereof as Exhibit "A."

5.      The WesternGeco Master License Agreement, by its terms, replaced and superseded all prior seismic license agreements between one or more of the Debtors and predecessors of WesternGeco, including Geco-Prakla, a division of Schlumberger Technology Corporation, Western Geophysical, a division of Western Atlas International Inc., and their related entities.

6.      Over the years, the Debtors have ordered and received a substantial quantity of Seismic Data from WesternGeco relating to various geographic areas under Supplemental Agreements issued under and subject to the terms of the WesternGeco Master License Agreement.

7.      Additionally, on or about March 31, 2006 but effective January 9, 2006, Geophysical Pursuit, Inc. ("GPI") entered into a Master Geophysical Data-Use License Agreement (the "GPI Master License Agreement") with one or more of the Debtors, pursuant to which the Debtors were granted a non-exclusive license to use on a limited and restricted basis

2

certain Seismic Data as from time to time was ordered by the Debtors pursuant to Supplemental Agreements issued in accordance with the terms and conditions thereof.  A copy of the GPI Master License Agreement is attached hereto and made a part hereof as Exhibit "B."

8.    The Debtors have likewise ordered and received Seismic Data relating to various geographic areas under Supplemental Agreements issued under and subject to the terms of the GPI Master License Agreement.  WesternGeco partnered with GPI in licensing a portion of that Seismic Data to the Debtors under the GPI Master License Agreement.

*ii)    The Bankruptcy Proceedings*

9.    On December 14, 2016 (the "Petition Date"), the Debtors each filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

10.    Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code §§1107 and 1108(a).

11.    On December 14, 2016, the Debtors filed a First Amended Joint Prepackaged Plan of Reorganization of Stone Energy Corporation and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [Rec. Doc. 20] and Proposed Disclosure Statement for Joint Prepackaged Plan of Reorganization of Stone Energy Corporation and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement") [Rec. Doc. Rec. 21].  Thereafter, on December 28, 2016, the Debtors filed the Second Amended Plan [Rec. Doc. 215].

12.    By Order dated December 21, 2016 [Rec. Doc. 150], the Court, upon the motion of the Debtors, set a combined hearing on approval of the Debtors' Disclosure Statement and Second

Amended Plan for February 14, 2017.   In addition, the Court set a number of plan confirmation deadlines and bar dates.

13.     The Debtors' Second Amended Plan, in large part, is premised upon a de-leveraging of the Debtors by reduction of greater than $850 million of debt and $46 million per year in interest expenses.   The primary vehicle to do that appears to be the extinguishment of $775 million of Senior Notes and $300 million of convertible notes, through the sale of the Debtors' Appalachia Property, which according to the Second Amended Plan includes the sale of all of the Debtors' assets located in the Marcellus and Utica Shales in Appalachia (located in Pennsylvania and West Virginia), as well as the assignment to the purchaser of certain as of yet undisclosed contracts and unexpired leases.

14.     Under the Second Amended Plan, unsecured creditors are to be paid in cash in full. Thus, they are deemed unimpaired and do not have a right to vote on the plan.   The same is true for a number of other classes of creditors, except Class 2 prepetition bank claims, and Class 3 Prepetition Notes Claims.   Thus, they are given the right to vote in the plan.   Nevertheless, upon confirmation, existing stockholders will generally be required to relinquish their ownership interests in the Debtors.   In their place, the Second Amended Plan provides for Class 3 Creditors to receive 85% of the net proceeds of the Appalachia Sale in excess of $350 million, as well as to be distributed 95% of the New Common Stock of Stone.   Thus, confirmation of the Second Amended Plan will result in a substantial change in ownership and control of the Debtors.[2]

15.     With regard to executory contracts and unexpired leases, Article VI, Section A of the Second Amended Plan provides in pertinent part that:

_____

[2] In addition to the change in ownership of the Debtors, the Second Amended Plan also contemplates a complete change of voting power at the Board of Directors level.   *See* Second Amended Plan, Section V (M).

4

> Except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party . . . unless such contract or lease: (1) was assumed or rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject Filed on or before the Confirmation Date; or (4) is set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases.

16.    Further, the Second Amended Plan provides that "[a]ssumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting assignment, the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired lease at any time before or on the date that the Debtors assume such Executory Contract or Unexpired Lease." *Id.*

17.    On December 23, 2016, the Debtors filed a Notice of Possible Assumption of Certain Executory Contracts and Unexpired Leases [Rec. Doc. 180] with the Court listing the executory contracts that they propose to assume and their proposed corresponding cure amounts for each contract.   The list identifies the following executory contracts that WesternGeco believes may pertain to WesternGeco, the WesternGeco Master License Agreement, the GPI Master License Agreement, and/or the Supplemental Agreements executed thereunder, with the following proposed cure amounts; nevertheless, the Debtors' list is so vague and unclear as to make it virtually impossible for WesternGeco to determine what contracts the Debtors actually intend to assume and/or assign:

5

| Number | Legal Entity | Counter-party | Contract Description | Date | Cure Amount |
|--------|--------------|---------------|----------------------|------|-------------|
| 2686 | Stone Energy Offshore, LLC | Catapult Exploration, LLC Fbo Westerngeco, LLC | Royalty Agreement | | $0.00 |
| 5408 | Stone Energy Corporation | Geco-Prakla[3] | Letter Agreement | 3/17/1997 | $0.00 |
| 5409 | Stone Energy Corporation | Geco-Prakla, division of Schlumberger Technology Corp. | | 9/22/1997 | $0.00 |
| 5418 | Stone Energy Corporation | Geophysical Pursuit, Inc. | Data or Software License Agreement | 1/9/2006 | $0.00 |
| 12299 | Stone Energy Corporation | Western Geco | Letter Agreement | 5/2/2007 | $0.00 |
| 12300 | Stone Energy Corporation | Western Geco | Letter Agreement | 7/11/2007 | $0.00 |
| 12304 | Stone Energy Corporation | Westerngeco LLC | Data or Software License Agreement | 11/27/2002 | $0.00 |
| 12305 | Stone Energy Corporation | Westerngeco LLC | Purchase Contract | 8/28/2008 | $0.00 |
| 12306 | Stone Energy Corporation | Westerngeco LLC | Sales Contract/Trade Agreement | 8/28/2008 | $0.00 |
| 12307 | Stone Energy Corporation | Westerngeco LLC | Sales Contract/Trade Agreement | | $0.0 |

## BASIS OF WESTERNGECO'S OBJECTION

*i)*      *WesternGeco's Seismic License Agreements are Executory Contracts*

18.      All of the Seismic License Agreements are executory contracts within the meaning of Bankruptcy Code § 365 as, among other things, the Debtors have continuing confidentiality obligations to WesternGeco under those agreements and restrictions upon their use of the licensed Seismic Data while, at the same time, WesternGeco has a continuing obligation to allow the Debtors to use the data and other information, and to defend legal proceedings arising out of the licensing thereof. *See, e.g., In re Aerobox Composite Structures, LLC*, 373 B.R. 135 (Bkrtcy.

---

[3] Geco-Prakla is a predecessor company to WesternGeco.

D.N.M. 7/27/07)(patent and technology license agreement found executory based primarily on continuing obligations of both parties to maintain confidentiality); *In re Chapin Revenue Cycle Management, LLC*, 343 B.R. 728 (Bkrtcy. M.D.Fla. 3/1/06)(computer software licensing agreement held to be executory contract where the licensor had obligation to allow continued use by debtor and debtor had obligation to maintain confidentiality of software). *See also In re Sunterra Corporation*, 361 F. 3d 257 (4th Cir. 3/18/04)(computer software licensing agreement held executory); *In re Superior Toy & Mfg. Co.*, 78 F. 3d 1169 (7th Cir. 3/7/96)(trademark license found to be executory contract).

ii)     *Assumption and Assignment of the Contracts is Prohibited By Bankruptcy Code § 365 (c)(1)(A) Absent the Consent of WesternGeco*

19.     Further, the Seismic Data licensed to the Debtors under the Seismic License Agreements is extremely valuable, proprietary in nature, and contains sensitive and confidential information of WesternGeco.

20.     The WesternGeco Master License Agreement, pursuant to which WesternGeco licensed Seismic Data to the Debtors, provides, among other things, that:

  a.     the Seismic Data licensed to the Debtors contains proprietary information and trade secrets of WesternGeco that are protected by international and United States trade secret and copyright laws and title to and ownership rights in such data shall at all times remain with WesternGeco. *See* WesternGeco Master License Agreement, p. 5, ¶2(A);

  b.     The Debtors will utilize the Seismic Data in accordance with the terms of the WesternGeco Master License Agreement for internal purposes only and will not disclose or transfer the Seismic Data except as provided in the WesternGeco Master License Agreement. *See* WesternGeco Master License Agreement, p.6, ¶ 4(A); and

  c.     The Debtors are authorized to "Disclose" or "Transfer" the Seismic Data under certain circumstances to "Related Entities," subject to certain conditions; however, the WesternGeco Master License Agreement

7

prohibits the Debtors from "Transferring" the Seismic Data to "Acquirers,"[4] "Partners" and other "Third Parties" unless WesternGeco is provided advance written notice of the proposed transaction, WesternGeco gives advance written consent for the transaction, and the parties execute a new Master License Agreement. In addition, the WesternGeco Master License Agreement makes it clear that WesternGeco's consent to a transfer of Seismic Data to Acquirers may be conditioned upon the Acquirer's payment of an additional license fee not to exceed fifty (50%) percent of the then-current list price for the data sought to be transferred. *See* Master License Agreement, pp. 6-7, ¶¶ 4(A)(iv)-(v), p. 8, ¶ 8(A)-(B);

21. Similarly, the GPI Master License Agreement, pursuant to which WesternGeco partnered with GPI in licensing Seismic Data to the Debtors, provides among other things, that:

a. the licensed Seismic Data shall remain the property of Licensor or Licensor's principal, as applicable, with Licensee acquiring no legal or equitable interest therein. *See* GPI Master License Agreement, p. 5, ¶3;

b. the Seismic Data is a valuable and unique asset of Licensor that constitutes Licensor's non-public, proprietary information and trade secrets, which Debtors are prohibited from directly or indirectly using, publishing, disseminating, displaying or otherwise disclosing except as expressly authorized in the GPI Master License Agreement. *See* GPI License Agreement, p. 7, ¶6.1; and

c. The Debtors are authorized to "Disclose" Seismic Data under certain circumstances to "Related Entities," "Consultants," "Processors," "Storage Contractors," "Governmental Agencies," "Partners," and "Acquirers,"[5] subject to certain conditions; however, the Debtors are prohibited from disclosing licensed Seismic Data to an Acquirer and an Acquirer is prohibited from using any licensed Seismic Data unless the Acquirer pays a transfer fee equal to 50% of Licensor's then published market rate license

---

[4] The term "Acquirers" is defined as "Third Parties that conclude a Third Party Acquisition with Licensee, whether accomplished by statutory merger, asset sale or purchase, stock sale or purchase, bankruptcy reorganization, or any other transaction." *See* WesternGeco Master License Agreement, p. 3, §2(1)(A). In turn, "Third Party Acquisition" is defined as "any transaction entered into by Licensee after the date hereof whereby any Third Party acquires the majority interest in the assets of Licensee, or otherwise gains Control or Ownership of Licensee or Licensee's oil and gas assets and business operations, whether by asset or stock purchase, statutory merger, bankruptcy reorganization or any other transaction." *Id.* at p. 4, §2(1)(Q). The term "Control" is defined as "the ability to direct, manage and/or dictate the actions of and/or determine the management of the entity in question whether by the election of members of the Board of Directors or other governing body of such entity, or by having a majority number of members of such governing body, or by other means." *Id.* at p. 3, §2(1)(C).
[5] The GPI Master License Agreement defines "Acquirer" as meaning "a Third-Party that acquires, directly or indirectly, Control of Licensee or a Related Entity, whether accomplished by merger, consolidation, share exchange, stock or asset sale or purchase, or otherwise." *See* GPI Master License Agreement, p. 2, ¶1.1.

fee for the data.   *See* GPI License, pp. 9-12, ¶¶7.1-7.9.

22.     Further, both the WesternGeco Master License Agreement and the GPI Master License Agreement provide that the agreements terminate: (1) upon the licensee's breach of the disclosure or transfer provisions or (2) upon the licensee's bankruptcy.   Moreover, should "Ownership" or "Control" of the licensee materially change, whether by virtue of acquisition, statutory merger, consolidation, buyout, or other transaction, both the WesternGeco Master License Agreement and GPI Master License Agreement automatically terminate, unless the licensor provides advance written consent for the assignment or transfer of the license agreement and the data licensed thereunder.[6]   *See* WesternGeco Master License Agreement, p. 10, ¶ 8; GPI Master License Agreement, pp. 13-14, ¶12.1.1.

23.     The Seismic Data licensed to the Debtors under the WesternGeco Master License Agreement and GPI Master License Agreement are "original works of authorship" of WesternGeco fixed in a tangible medium of expression from which they can be perceived, reproduced or otherwise communicated.   Thus, they are covered and protected by the U.S. Copyright Act.   *See* 17 U.S.C. §102 et. seq.

24.     It has been held that under U.S. copyright law, nonexclusive licenses such as were granted to the Debtors under the WesternGeco Master License Agreement and GPI Master License Agreement are personal to the licensee, and the licensee cannot assign them to a third party without the consent of the copyright owner.   *See, e.g., In re Patient Education Media, Inc.*, 210 B.R. 237, 241 (Bkrtcy. S.D.N.Y. 1997).   This is primarily because, under 17 U.S.C. §204(a), a transfer of copyright ownership, other than by operation of law (such as succession law), is not valid unless an

---

[6] The GPI Master License Agreement goes on to provide that the licensor's consent to a change in control of the licensee "shall be conditioned upon the payment of a transfer fee equal to fifty-percent (50%) of Licensor's then published market rate license fee with respect to the Licensed Material."

instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed.

25.     For that reason, it has been held that U.S. copyright law constitutes "applicable law" under Bankruptcy Code § 365 (c)(1)(A) that "excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession . . .".   *See, e.g., In re Sunterra Corporation*, 361 F.3d 257, 262 (4th Cir. 2004); *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 309-310 (Bkrtcy. D.Del. 2001); *In re Patient Education Media, Inc.*, 210 B.R. 237, 243 (Bkrtcy. S.D.N.Y. 1997).

26.     Thus, the Seismic Data licensed to the Debtors under the WesternGeco Master License Agreement and GPI Master License Agreement is excepted from the general rules authorizing assumption and assignment of executory contracts under Bankruptcy Code §365 (c)(1)(A) even without the counter-party's consent, and rendered non-assumable and non-assignable by the Debtors.

27.     In addition, state law also precludes the assumption and/or assignment of both the WesternGeco Master License Agreement and GPI Master License Agreement by the Debtors.

28.     The Seismic Data licensed by the Debtors under the WesternGeco Master License Agreement and GPI Master License Agreement is a protected trade secret of WesternGeco under the Texas Uniform Trade Secrets Act.   *See* Tex. Civ. Prac. & Rem. Code §§ 134A.001, et seq. *See, e.g., In re Bass*, 113 S.W.3d 735 (Tex. 2003).   In fact, under Texas law, an actionable misappropriation is considered to exist when a disclosure or use of a trade secret occurs without the express or implied consent of the owner.   Tex. Civ. Prac. & Rem. Code § 134A.002(3).

Further, under Texas law, a person who, without the owner's consent, knowingly (a) steals a trade secret; (b) makes a copy of an article representing a trade secret; or (3) communicates or transmits a trade secret, is guilty of committing a felony.   *See* Tex. Penal Code Ann. § 31.05.

29.     As such, the Texas Uniform Trade Secrets Act also constitutes "applicable law" under Bankruptcy Code §365 (c)(1)(A) that "excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession," and thus renders the WesternGeco Master License Agreement and GPI Master License Agreement, as well as the Seismic Data licensed by the Debtors thereunder, non-assumable and non-assignable without WesternGeco's consent.

30.     The Debtors have not sought the consent of WesternGeco, and WesternGeco does not consent to the assumption and/or assumption and assignment of the WesternGeco Master License Agreement and GPI Master License Agreement, or the Supplemental Agreements executed thereunder, absent strict compliance with the terms thereof and payment of an agreed upon license transfer fee, as is contemplated by and expressly referred to in the WesternGeco Master License Agreement and GPI Master License Agreement.

31.     In light of the foregoing, WesternGeco objects to the provisions of Article VI of the Debtors' Second Amended Plan, to the extent it fails to carve out WesternGeco's non-assumable and/or assignable executory contracts from the executory contract provisions of the Debtors' plan, on the basis that the executory contract provision impermissibly violate WesternGeco's contractual rights, their rights under U.S. Copyright law and the Texas Uniform Trade Secrets Acts, as well as Bankruptcy Code §365 (c)(1)(A).

iii)     *The Seismic License Agreements Contain Valid "change in control" Provisions that the Debtors Must Comply With in Order to Assume and/or Assign them*

32.     Finally, as noted above, the WesternGeco Master License Agreement and GPI Master License Agreement each contain "change in control" provisions that essentially prohibit a change in control of the licensee, whether in the form of a merger, acquisition, stock sale, asset sale, consolidation, buy-out, assignment, transfer, or otherwise, without the prior written consent of the licensor and automatically terminate the agreements in the event of such a change in control.[7]

33.     Change of control provisions of the type contained in the WesternGeco Master License Agreement and GPI Master License Agreement have been held to be valid and enforceable against a debtor.  *See, e.g.*, *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 174 (Bkrtcy. E.D.Va. 1993).

34.     Thus, WesternGeco objects to Article VI, Section A of the Debtors' Second Amended Plan, to the extent it provides that "[a]ssumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting assignment, the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired lease. . .", as this impermissibly violates and purports to modify the "change in control" provisions of the WesternGeco Master License Agreement and GPI Master License Agreement, which prohibit transfers and changes in control or ownership of the licensee without the advance written consent of the licensor.

---

[7] The WesternGeco Master License Agreement prohibits the licensee from assigning or transferring its rights or obligations thereunder without the consent of WesternGeco, and defines the term "assignment" as including changes in control.  *See* WesternGeco Master License Agreement, Section Two, ¶ 8(A) & (B).

35.     The Debtors cannot assume favorable provisions and reject unfavorable provisions when assuming an executory contract. *See In re E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45, 49 (Bankr. M.D.N.C. 2003).   To that end, although 11 U.S.C. § 365(e) and (f) generally provide that ipso facto and anti-assignment clauses in executory contracts can be stricken as contrary to the Bankruptcy Code, it has been held that 11 U.S.C. § 365(e) and (f) do not operate to invalidate clauses that permit termination of a contract upon a change in control of the debtor party. *See In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 174 (Bankr. E.D.VA 1993)(noting that the change in control provision at issue was neither an ipso facto clause nor a non-assignment clause). Further, courts recognize that executory contracts should be evaluated on a case by case basis to determine the effect of enforcement of these types of provisions on both the debtor party and the non-debtor party, specifically including the extent of the economic detriment suffered by the non-debtor party. *See In re E-Z Serve*, 289 B.R. at 50(noting that a bankruptcy court's "authority to excise a bargained for element of a contract is questionable" and that "modification of a nondebtor contracting party's rights is not to be taken lightly").

36.     The transfer and change in control restrictions in the WesternGeco Master License Agreement and GPI Master License Agreement are critical to WesternGeco's business model because WesternGeco makes a substantial investment in creating its own seismic data and earns revenue by granting non-exclusive access to this data to multiple customers under restrictive license agreements.   If the transfer and change in control restrictions are not enforced and the WesternGeco Master License Agreement, GPI Master License Agreement, and related data can be transferred freely, the value of the licenses will be severely diminished.   For this reason, the transfer and change in control provisions in the Agreements are essential, bargained-for elements

13

of the Seismic Agreements with the Debtors, which must be enforced, absent an agreement between WesternGeco and the Debtors regarding the payment to WesternGeco of an agreed upon transfer fee.

CONCLUSION

37.     For the foregoing reasons, absent an agreement as to a mutually acceptable transfer fee to be paid by the Debtors to WesternGeco, L.L.C., WesternGeco, L.L.C. objects to confirmation of the Debtors' Second Amended Plan as written, and requests that the Court deny confirmation of that plan unless: (a) WesternGeco's non-assumable and assignable executory contracts are carved out of the provisions of Article VI, Section A of the Debtors' Second Amended Plan regarding the assumption of executory contracts; and (b) the language of Article VI, Section A of the Debtors' Second Amended Plan, providing that "[a]ssumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting assignment, the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired lease. . .", is eliminated.   WesternGeco, L.L.C. further pray for any other and further relief as is just and equitable.

Respectfully submitted,

/s/ Andrew A. Braun
ANDREW A. BRAUN
Texas Bar No. 24061558
MARGARET V. GLASS
Texas State Bar No. 24091315
GIEGER, LABORDE & LAPEROUSE, L.L.C.
Suite 4800 - One Shell Square
701 Poydras Street

New Orleans, Louisiana   70139-4800
Telephone:   (504) 561-0400
Email: abraun@glllaw.com
Email: mglass@glllaw.com

*Counsel for WesternGeco, L.L.C.*

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | * | Case No.   16-36390 (MI) |
| | * | |
| STONE ENERGY CORPORATION, et al. | * | Chapter 11 |
| | * | |
| Debtors. | * | (Joint Administration Pending) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Limited Objection of WesternGeco, L.L.C. to the Debtors' Second Amended Joint Prepackaged Plan of Reorganization, was served via electronic mail on the 12th day of January 2017, upon all parties in interest listed on the ECF service list.

/s/ Andrew A. Braun