IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| STONE ENERGY CORPORATION, *et al.*,[1] | § | CASE NO. 16-36390 (MI) |
| | § | Jointly Administered |
| Debtors. | § | |

**ORDER APPROVING AND AUTHORIZING (A) ASSUMPTION OF PURCHASE AND
SALE AGREEMENT, (B) BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (C)
FORM AND MANNER OF NOTICE OF THE SALE HEARING AND ASSUMPTION
PROCEDURES, (D) THE PURCHASE AND SALE AGREEMENT AS THE STALKING
HORSE BID, (E) BIDDING PROCEDURES, AND (F) RELATED RELIEF**
[This Order Relates to the Motion at ECF No. 29]

Upon consideration of the *Debtors' Motion for Entry of an Order Approving (I) (A)*

*Assumption of Purchase and Sale Agreement, (B) Break-Up Fee and Expense Reimbursement,*

*(C) Form and Manner of Notice of the Sale Hearing and Assumption Procedures, and (D) Solely*

*in the Event an Auction Process Is Required, (i) the Purchase and Sale Agreement as the*

*Stalking Horse Bid and (ii) Bidding Procedures; (II) (A) the Sale of Certain Assets of the*

*Debtors Located in Appalachia Free and Clear of All Claims, Liens, Liabilities, Rights, Interests*

*and Encumbrances Except for Permitted Title Encumbrances, and (B) the Debtors' Assumption*

*and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Related Relief*

(the "Motion")[2], and the Court having reviewed the Motion and the Court having previously

entered the *Order Authorizing Assumption of Contract with TH Exploration III, LLC, as*

*Amended* [Docket No. 272] (the "January 10 Order"); and the Court having jurisdiction to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Stone Energy Corporation (5413); Stone Energy Holding, L.L.C. (3151); and Stone Energy Offshore, L.L.C. (8062).  The above-captioned Debtors' mailing address is 625 E. Kaliste Saloom Road, Lafayette, Louisiana 70508.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion or the Bidding Procedures, as applicable.

consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being allowed before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Debtors are authorized, pursuant to Bankruptcy Code Sections 365(a) and 105(a), to assume the PSA, perform all of their obligations thereunder, and implement the actions contemplated thereby, and effective as of January 10, 2017, the PSA is assumed pursuant to Bankruptcy Code Section 365(a).  For the avoidance of doubt and notwithstanding anything to the contrary contained in this Order, the assumption of the PSA shall not be deemed to be approval of the sale of the Appalachia Assets (the "Sale") or authorization to consummate the Sale, such approval and authorization (if any) to be considered only at the Sale Hearing.

2.      The January 10 Order (i) shall remain in full force and effect and is ratified hereby and (ii) is incorporated herein by reference as if fully set forth herein.

3.      Any objections to the Motion or the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits except as otherwise set forth herein and in the January 10 Order.

2

4.     The PSA is authorized and approved in the form attached as Exhibit B to the Motion as the Stalking Horse Bid, and the Buyer is authorized and approved as the Stalking Horse Bidder.  The PSA shall be binding and enforceable on the parties thereto in accordance with its terms; provided that, for the avoidance of doubt, the maximum amount of the claims of the Buyer against the Debtors prior to the Closing shall be as set forth in Section 3.02 of the PSA, including as specified in Section 3.02(c)(x) of the PSA.

5.     The failure to describe specifically or include any particular provision of the PSA or related documents in the Motion or herein shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the PSA be assumed by the Debtors in its entirety (including any exhibits or attachments thereto).

6.     The PSA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, solely in accordance with the terms thereof, without further order of the Court.

7.     The parties to the PSA are granted all rights and remedies provided to them under the PSA, including, without limitation, the right to specifically enforce the PSA in accordance with its terms.

8.     No defaults exist under the PSA.  Accordingly, the Debtors shall not be required to satisfy the requirements of Bankruptcy Code Section 365(b)(1).  Specifically, the Debtors shall not be required to: (i) cure, or provide adequate assurance that the Debtors will promptly cure, any default under the PSA, (ii) compensate, or provide adequate assurance that the Debtors will promptly compensate, the Buyer for any actual pecuniary loss resulting from any default, or (iii) provide adequate assurance of future performance of the PSA.

US 4802431v.5
US-DOCS\75648729.7

9.      To the extent the automatic stay provisions of Bankruptcy Code Section 362 would otherwise apply, such provisions are vacated and modified to effectuate all of the terms and provisions of the PSA and this Order, including permitting the parties to the PSA to exercise all rights and remedies under the PSA in accordance with its terms, and deliver any notice contemplated thereunder, in each case, without further order of the Court.

10.     The Bidding Procedures, substantially in the form attached hereto as **<u>Annex 1</u>**, are incorporated herein and approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Bidding Procedures shall apply to the Qualified Bid by the Buyer, the potential bid by American Petroleum Partners LLC or any affiliate thereof or any entity controlled thereby ("<u>APP</u>") and the conduct of the Sale and the Auction.

11.     The Break-up Fee and Expense Reimbursement, as set forth in the PSA, are approved.  The obligations of the Debtors to pay the Break-up Fee and Expense Reimbursement: (i) shall be entitled to administrative expense priority status under Bankruptcy Code Sections 503(b)(1)(A) and 507(a)(2); (ii) shall not be subordinate to any other administrative expense claim against the Debtors other than the 507(b) Claims (as defined in the *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 256]); (iii) shall survive the termination of the PSA; and (iv) are payable pursuant to the terms set forth in the PSA.

US 4802431v.5
US-DOCS\75648729.7

12.     The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

13.     The Notice of Sale Hearing to be issued in connection with the Sale, substantially in the form of **Annex 2**, is approved and sufficient to provide notice of the Sale.

14.     The form of Assumption Notice was proper and sufficient to provide notice in accordance with the Contract Assumption Procedures.

15.     Notwithstanding anything to the contrary herein and for the avoidance of doubt, for all purposes under the Bidding Procedures, (i) the Buyer shall be considered a Qualified Bidder and (ii) the PSA shall be considered a Qualified Bid.

16.     The following "Contract Assumption Procedures" are approved:

a)      Within fourteen (14) calendar days after the Petition Date (the "Assumption Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to an Assumed Contract the Assumption Notice.

b)      The Assumption Notice shall include, without limitation, the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section Bankruptcy Code Sections 365(b)(1)(A) and (B) for each of the Assumed Contracts.  If a Counterparty objects to the Cure Amount or to a lack of adequate assurance of future performance by the Buyer, the Counterparty must file with the Clerk of this Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service a written objection on or prior to the Contract Objection Deadline (as defined below).

c)      Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules; (iii) be filed with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, **on or before 5:00 p.m. (prevailing Central Time) on January 24, 2017** (the "**Contract Objection Deadline**"); and (iv) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under Bankruptcy Code Section 365(b)(1)(A) and (B) for the applicable Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

US 4802431v.5
US-DOCS\75648729.7

d) If, after the Assumption Notice Deadline, additional executory contracts or unexpired leases of the Debtors are determined to be Assumed Contracts, as soon as practicable thereafter and in no event less than one (1) business day before the date of the Sale Hearing, the Debtors shall file with the Court and serve on the applicable Counterparties a supplement to the Assumption Notice (a "<u>Supplemental Assumption Notice</u>").  If such Supplemental Assumption Notice is filed at least ten (10) days prior to the Contract Objection Deadline, then any Contract Objection with respect thereto shall be filed on the Contract Objection Deadline.  If such Supplemental Assumption Notice is filed less than ten (10) days prior to the Contract Objection Deadline but more than ten (10) days prior to the Sale Hearing, then any Contract Objection with respect thereto shall be filed on the tenth (10th) day following the filing of such  Supplemental Assumption Notice.  If such Supplemental Assumption Notice is filed less than ten (10) days prior to the Sale Hearing, the Court will, by separate order, establish a contract objection deadline solely applicable to such assumed executory contracts or leases.

e) If the Buyer is not the Prevailing Purchaser at the Auction, as soon as practicable thereafter and in no event less than one (1) business day before the date of the Sale Hearing, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties that filed a Contract Objection a notice identifying such Prevailing Purchaser, and the Counterparties shall file any Contract Objections (or any supplement to any Contract Objection) solely on the basis of adequate assurance of future performance not later than two (2) hours prior to the commencement of the Sale Hearing.

f) At the Sale Hearing, the Debtors shall seek Court approval of the assumption and assignment to the Buyer or APP of only those Assumed Contracts that have been selected by the Prevailing Purchaser to be assumed and assigned (collectively, the "<u>Selected Assumed Contracts</u>").  The Debtors and their estates reserve any and all rights with respect to any Assumed Contracts that are not ultimately designated as Selected Assumed Contracts.

g) If no Contract Objection is timely received with respect to a Selected Assumed Contract: (i) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Prevailing Purchaser of the Selected Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Buyer or APP); (ii) any and all defaults under the Selected Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code Sections 365(b)(1)(A) and (B) upon payment of the Cure Amount set forth in the Assumption Notice for such Selected Assumed Contract; and (iii) the Cure Amount set forth in the Assumption Notice for such Selected Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Selected

6

Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assumed Contract against the Debtors and their estates or the Prevailing Purchaser, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

h)      To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under Bankruptcy Code Sections 365(b)(1)(A) and (B) (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the Prevailing Purchaser provided that the cure amount the Counterparty asserts is required to be paid under Bankruptcy Code Sections 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

i)      Any party failing to timely file a Contract Objection with respect to the assumption and assignment of any Assumed Contract or related Cure Amount specified on an Assumption Notice will be barred from objecting thereto, including asserting any additional cure or other default amounts against the Debtors or any of the Debtors' estates or the Prevailing Purchaser with respect to such Assumed Contract and shall be deemed to consent to the Sale and the assumption and assignment of such Assumed Contract assumed and assigned in connection therewith.

17.     The Debtors' decision to assume and assign the Assumed Contracts to the Prevailing Purchaser is subject to the Court's approval and the closing of the Sale.  Accordingly, absent this Court's approval and the closing of the Sale, the Assumed Contracts shall not be deemed assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with the Chapter 11 Cases.

18.     The inclusion of a contract, lease, or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates,

7

the Prevailing Purchaser, or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of Bankruptcy Code Section 365, and any and all rights with respect thereto shall be reserved.

19.     The Notice of Sale Hearing, the Assumption Notice, and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Auction, the Sale, the Sale Hearing, and the assumption and assignment to the Prevailing Purchaser of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

20.     Within five (5) business days after entry of this Order, the Debtors shall serve the Notice of Sale Hearing, substantially in the form attached hereto as **Annex 2**, by first class mail, postage prepaid, upon: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the agent for the Debtors' prepetition secured bank group; (c) counsel to the Consenting Holders; (d) the indenture trustee for the Senior Convertible Notes due 2017; (e) the indenture trustee for the Senior Notes due 2022; (f) the Securities and Exchange Commission; (g) counsel to the Buyer; (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (i) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (j) all taxing authorities having jurisdiction over any of the Appalachia Assets, including the Internal Revenue Service; (k) all persons and entities known or reasonably believed to have asserted a lien or other interest in any of the Appalachia Assets; (l) the Counterparties to the Assumed Contracts; (m) APP; (n) the attorneys general in the jurisdictions where the Appalachia Assets are located; (o) the Environmental Protection Agency; (p) all state and local environmental agencies in Appalachia

US 4802431v.5
US-DOCS\75648729.7

where the Debtors own or have owned or used real property; and (q) all other known creditors of the Debtors.

21.     The Notice of Sale Hearing shall also be posted on (a) the Court's website at http://www.txs.uscourts.gov and (b) the case website maintained by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC (http://dm.epiq11.com/StoneEnergy).

22.     Not later than twenty-one (21) days prior to the date of the Sale Hearing, the Debtors shall cause the Notice of Sale Hearing to be published once in *The Wall Street Journal*. Such publication conforms to the requirements of Bankruptcy Rules 2002(*l*) and 9008, and is reasonably calculated to provide notice to any affected party, including any potential bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

23.     Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than a Contract Objection, which shall be governed by the Contract Assumption Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) set forth the specific basis for the Sale Objection; and (d) be filed with the Clerk of this Court, 515 Rusk Street, Houston, Texas 77002, together with proof of service, **on or before 5:00 p.m. (prevailing Central Time) on January 30, 2017** (the "Sale Objection Deadline").  If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale and may not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

24.     If APP does not submit a timely Qualified Bid on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that this Court approve

US 4802431v.5
US-DOCS\75648729.7

the PSA and the transactions contemplated thereunder.  In the event that APP does submit a timely Qualified Bid, the Debtors shall conduct the Auction in accordance with the Bidding Procedures, and following the Auction, the Debtors shall have the sole and exclusive right to determine which Qualified Bid is the Prevailing Bid, subject to the rights of the Creditor Constituencies or any other party in interest to object at the Sale Hearing.

25.     Within one (1) business day after the conclusion of the Auction (if any), the Debtors shall file a notice identifying the Prevailing Purchaser.

26.     The Sale Hearing shall be held before the Honorable Marvin Isgur, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas, at 515 Rusk Street, Courtroom 404, Houston, Texas 77002, **on February 10, 2017 at 9:00 a.m. (prevailing Central Time)**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' Chapter 11 Cases.

27.     Except as otherwise provided in the Bidding Procedures, the Debtors and their advisors shall (i) consult with the Creditor Constituencies (as defined in the Bidding Procedures) and their advisors on all material aspects of the sale process described in the Bidding Procedures and all material decisions and documents contemplated thereby and (ii) respond promptly to reasonable requests of the Creditor Constituencies and their advisors for information and/or documents relating to the sale process, the Stalking Horse Bidder, Qualified Bids, the Auction, and the Sale Hearing.  Notwithstanding anything in the Bidding Procedures to the contrary and for the avoidance of doubt, (i) the Debtors shall not be required to consult with the Stalking Horse Bidder with respect to the determination of what constitutes a Qualified Bid and whether

10

APP is selected as a Qualified Bidder, and (ii) the Debtors shall have the sole and exclusive right to determine the highest or otherwise best bid, subject to the rights of the Creditor Constituencies and other parties in interest to object at the Sale Hearing.

28.     The Debtors reserve their rights, in the exercise of their fiduciary obligations, (a) to modify the Bidding Procedures or impose, at or prior to the Auction, different and/or additional terms and conditions regarding the sale of the Appalachia Assets and (b) to announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; provided, however, that, in the case of both (a) and (b), such modifications or rules (i) are not inconsistent in any material respect with, and do not violate, the Bidding Procedures or the PSA and (ii) do not impair or modify the Stalking Horse Bidder's rights and obligations under the Bidding Procedures or under the PSA (unless the Stalking Horse Bidder provides written consent to such modifications or rules); provided, further, that the Debtors may not waive or modify the terms of the Bidding Procedures without the prior consent of the Stalking Horse Bidder (which consent shall not be unreasonably withheld, conditioned, or delayed), the Consenting Holders (which consent shall not be unreasonably withheld, conditioned, or delayed), or the Consenting Banks (which consent shall not be unreasonably withheld, conditioned, or delayed).

29.     This Order shall be binding upon all creditors of, and equity holders in, the Debtors and any and all other parties in interest, including, without limitation, the Buyer, APP, the Debtors and their affiliates and subsidiaries, and any trustee or successor trustee appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code.

30.     All obligations of the Debtors to the Buyer pursuant to the PSA and any related agreements executed in connection therewith (including any amounts payable by the Debtors to

US 4802431v.5
US-DOCS\75648729.7

Buyer thereunder) shall (a) constitute an allowed administrative expense claim under Bankruptcy Code Sections 503(b)(1)(A) and 507(a)(2); (b) not be subordinate to any other administrative expense claim against the Debtors other than the 507(b) Claims (as defined in the *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV)Granting Related Relief* [Docket No. 256]), (c) not be altered, amended, impaired, discharged or affected by any chapter 11 plan proposed or confirmed in these Chapter 11 Cases without the prior written consent of the Buyer, (d) not be subject to rejection or avoidance (whether through any avoidance, fraudulent transfer, preference or recovery, Claim, action or proceeding arising under chapter 5 of the Bankruptcy Code, or under any similar state or federal law or any other cause of action by the Debtors, any chapter 7 or chapter 11 trustee of Debtors' bankruptcy estates or any other person or entity), (e) be paid by the Debtors in the time and manner provided for in the PSA without further order of this Court; and (f) not be subject to any bar date in these Chapter 11 Cases or any requirement to file any request for allowance of administrative claim or proof of claim.

31.     Notwithstanding the application of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

33.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2017
          Houston, Texas

                                      _____
                                      MARVIN ISGUR
                                      UNITED STATES BANKRUPTCY JUDGE

US 4802431v.5
US-DOCS\75648729.7

## **Annex 1**

Bidding Procedures

**BIDDING PROCEDURES**

These "Bidding Procedures" set forth the process by which Stone Energy Corporation, Stone Energy Holding, L.L.C., and Stone Energy Offshore, L.L.C., debtors and debtors-in-possession (the "Debtors") in their Chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), Case No. 16-36390 (MI), are authorized to conduct a sale by auction (the "Auction") of their assets in accordance with that certain Purchase and Sale Agreement, dated October 20, 2016 (as amended or otherwise modified prior to the date of entry of the Bidding Procedures Order (as defined below), the "Stalking Horse Agreement"), between Stone Energy Corporation, a Delaware corporation, and TH Exploration III, LLC, a Texas limited liability company (the "Stalking Horse Buyer")), a copy of which was filed with the Bankruptcy Court as Exhibit B to the Motion (as defined below) on December 14, 2016.

These Bidding Procedures were approved by an order of the Bankruptcy Court, dated January [__], 2017 (the "Bidding Procedures Order"), pursuant to the *Debtors' Motion for Entry of an Order Approving (I) (A) Assumption of Purchase and Sale Agreement, (B) Break-Up Fee and Expense Reimbursement, (C) Form and Manner of Notice of the Sale Hearing and Assumption Procedures, and (D) Solely in the Event an Auction Process Is Required, (i) the Purchase and Sale Agreement as the Stalking Horse Bid and (ii) Bidding Procedures; (II) (A) the Sale of Certain Assets of the Debtors Located in Appalachia Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances Except for Permitted Title Encumbrances, and (B) the Debtors Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Related Relief* (the "Motion").

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion, the Bidding Procedures Order, or the Stalking Horse Agreement, as applicable. Any party desiring to obtain a copy of the Motion, the Stalking Horse Agreement, the Bidding Procedures, and/or the Bidding Procedures Order, in addition to any related motions that may be filed, may do so by accessing the website of the Debtors' notice and claims agent, Epiq Bankruptcy Solutions, LLC, at http://dm.epiq11.com/StoneEnergy, or the Bankruptcy Court's website at http://www.txs.uscourts.gov, or, for a fee, through an account obtained from the PACER website at http://pacer.psc.uscourts.gov.   The documents may also be obtained by contacting the Debtors' counsel at Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline A. Reckler and Matthew L. Warren.

(a)      Assets To Be Sold

The Debtors provide these Bidding Procedures in connection with the Auction for all or a material portion of the Assets (as defined in the Stalking Horse Agreement).

(b)      Confidentiality Agreements

Upon execution of a confidentiality agreement, in form and substance satisfactory to the Debtors and the Consenting Holders (as defined below), APP (as defined in the Bidding Procedures Order) will be granted access to information that has been provided to the Stalking Horse Buyer and any other information upon reasonable request by APP which will also be

provided to the Stalking Horse Buyer.  Notwithstanding the foregoing, APP shall not be provided any information, documents, reports, communications, notices, evaluations, or other materials or analyses that were provided to the Debtors or any other Creditor Constituent by the Stalking Horse Bidder.

(c)  <u>Due Diligence</u>

By submitting a bid, APP shall be deemed to acknowledge and represent that it has had an opportunity to conduct due diligence on the Debtors prior to making its bid; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid; and that it did not rely upon any written or oral statement, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Debtors or the Assets, or the completeness of any information provided in connection therewith.

(d)  <u>Determination of "Qualified Bidder" Status</u>

To participate in the bidding process and be deemed a "<u>Qualified Bidder</u>," APP must deliver to the Debtors at Stone Energy Corporation, 625 E. Kaliste Saloom Road, Lafayette, Louisiana 70508, Attn: Lisa S. Jaubert and Kenneth H. Beer, with copies to (a) counsel for the Debtors, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David S. Heller, Esq., Josef S. Athanas, Esq., Caroline A. Reckler, Esq., and Matthew L. Warren, Esq., Email: david.heller@lw.com, josef.athanas@lw.com, caroline.reckler@lw.com, and matthew.warren@lw.com; (b) counsel for the administrative agent for the Debtors' prepetition secured financing under that certain Fourth Amended and Restated Credit Agreement, dated as of June 24, 2014 and as amended, restated, modified, supplemented, or replaced from time to time, among Stone Energy Corporation, as borrower, such financial institutions, as lenders, Bank of America, N.A., as administrative agent and issuing bank (the "<u>Consenting Banks</u>"), O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: George Davis, Esq., Suzzanne S. Uhland, Esq., Daniel S. Shamah, Esq., and Michael Lotito, Esq., Email: gdavis@omm.com, suhland@omm.com, dshamah@omm.com, and mlotito@omm.com; (c) counsel to the holders of the 2017 Convertible Notes (as defined in the Stalking Horse Agreement) and the 2022 Notes (as defined in the Stalking Horse Agreement) who are parties to that certain Restructuring Support Agreement, dated as of October 20, 2016, by and among Stone Energy Corporation and certain of the holders of the 2017 Convertible Notes and the holders of the 2022 Notes, as amended or modified from time to time (the "<u>Consenting Holders</u>"), Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY, 10036-6745, Attn: Michael S. Stamer, Esq., Meredith Lahaie, Esq., and Stephen B. Kuhn, Esq., Email: mstamer@akingump.com, mlahaie@akingump.com, and skuhn@akingump.com; and (d) counsel to the Ad Hoc Equity Committee, Quinn Emanuel Urquhart & Sullivan, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, CA, 90017, Attn: K. John Shaffer (collectively, the entities referenced in parts (b), (c), and (d), the "<u>Creditor Constituencies</u>"), a written offer (a "<u>Qualified Bid</u>"), so as to be received by no later than February 3, 2017 at 5:00 p.m. (prevailing Central Time) (the "<u>Bid Deadline</u>"), that:

2

1.      states that APP offers to purchase all or substantially all of the Assets, with a specific indication of which Assets are subject to the bid;

2.      is based on the Stalking Horse Agreement and includes executed transaction documents (including a definitive purchase agreement and all schedules and exhibits thereto), signed by an authorized representative of APP, pursuant to which APP proposes to effectuate an alternate transaction (the "Bidder Agreement"), and such Bidder Agreement shall also include a copy of the Bidder Agreement marked against the Stalking Horse Agreement to show all changes requested by APP (including those related to the consideration to be paid for the Assets and to remove all provisions that apply only to the Stalking Horse Buyer as the stalking horse bidder), which shall in the aggregate not be adverse to the Debtors;

3.      includes a summary term sheet with the material terms of the bid;

4.      proposes a purchase price that is a higher and/or better offer for the Assets (as compared to the offer of the Stalking Horse Buyer contained in the Stalking Horse Agreement); *provided*, *however*, that a bid shall not be considered a higher and/or better offer unless such bid (or combination of bids) proposes a minimum cash purchase price to be paid at the consummation of the transaction equal to or greater than:

(i)      the Purchase Price set forth in the Stalking Horse Agreement, *plus*

(ii)     a break-up fee equal to $10,800,000 (representing 3% of the Purchase Price set forth in the Stalking Horse Agreement) (the "Break-up Fee"), which, for the avoidance of doubt, (a) shall be owed to the Stalking Horse Buyer upon the closing of a sale of the Assets or a material portion thereof to a bidder other than the Stalking Horse Buyer and (b) shall be paid in full in cash by the Debtors from the consideration to be paid by APP and not in addition to the consideration to be paid by APP, *plus*

(iii)    the aggregate amount of the Expense Reimbursement under, and as defined in, the Stalking Horse Agreement, which amount shall not exceed an aggregate amount equal to $3,600,000 (representing 1% of the Purchase Price set forth in the Stalking Horse Agreement) (collectively, the "Reimbursable Expenses"), which, for the avoidance of doubt, (a) shall be owed to the Stalking Horse Buyer upon the closing of a sale of the Assets or a material portion thereof to a bidder other than the Stalking Horse Buyer and (b)

3

shall be paid in full in cash by the Debtors from the consideration to be paid by APP and not in addition to the consideration to be paid by APP, *plus*

(iv)     $3,600,000.

In addition, such bid for the Assets must also provide either (1) the identical assumption of Assumed Obligations as the Stalking Horse Buyer has offered (or on terms that are economically equivalent or superior) or (2) cash in an amount equal to the Assumed Obligations that would have been assumed and/or paid by the Stalking Horse Buyer but are not being assumed and/or paid pursuant to such bid;

5.      is irrevocable until and unless the Debtors accept a higher or otherwise better Qualified Bid, in which case APP shall be selected as the Back-Up Bidder (as defined below);

6.      does not request any expense reimbursement, break-up fee, work fee, "topping," termination, contribution, or other similar fee or payment;

7.      contains such financial and other information that will reasonably allow the Debtors to make a determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Bidder Agreement in a timely manner, including:

(i)      contact names and numbers for verification of financing sources (if applicable);

(ii)     evidence of internal resources and proof of unconditional debt or equity funding commitments from a recognized financial institution in the amount of the cash portion of such bid or the posting of an irrevocable letter of credit from a recognized financial institution issued in favor of the Debtors in the amount of the cash portion of such bid, in each case, as are needed to consummate the Bidder Agreement;

(iii)    current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors;

(iv)     such financial and other information setting forth adequate assurance of future performance under Bankruptcy Code Section 365 in a form requested by the Debtors to allow the Debtors to serve on counterparties to any contracts or leases being assigned or both assumed and assigned in connection with the proposed sale in a timely manner so as to not disrupt the sale process; and

4

(v) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, demonstrating that APP has the ability to consummate the Bidder Agreement;

8. if the bid is to be made through an entity formed for the purpose of the proposed sale transaction, such bid shall include a guarantee or other credit support enforceable by the Debtors;

9. contains a list of any and all executory contracts and unexpired leases of the Debtors that APP wishes to have assumed and assigned to it pursuant to the Bidder Agreement and the corresponding cure amounts, which list is satisfactory to the Debtors;

10. contains such information requested by the Debtors regarding the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, which information is satisfactory to the Debtors;

11. includes evidence of authorization and approval from the APP's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Bidder Agreement, which evidence is satisfactory to the Debtors;

12. includes covenants and conditions, if any, reasonably acceptable to the Debtors, but under no circumstances shall a bid be conditioned on the obtaining or the sufficiency of financing or any internal or credit committee approval, syndication requirements, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, all of such shall be specifically set forth in the Bidder Agreement and shall not be more burdensome to the Debtors' estates than those set forth in the Stalking Horse Agreement; and

13. is accompanied by a good-faith cash deposit in the form of a wire transfer or certified check in an amount no less than ten percent (10%) of the purchase price set forth in the Bidder Agreement, which amount shall be deposited in an escrow account established by the Debtors and subject to an escrow agreement satisfactory to the Debtors and in substantially the same form as the Escrow Agreement (as defined in the Stalking Horse Agreement), which deposit shall be credited against the purchase price at the closing of the transaction contemplated under the Bidder Agreement.

5

By submitting a bid, APP shall be deemed to waive the right to assert or seek payment of any "break-up" fee, expense reimbursement, or other post-filing claim, including administrative expense claims, and to the extent otherwise applicable, a substantial contribution claim under Bankruptcy Code Section 503, with respect to its bid or the marketing or auction process.

A competing bid meeting the above requirements, as may be supplemented by the Debtors, shall constitute a Qualified Bid.  The Debtors shall make a determination regarding whether a bid is a Qualified Bid and the Debtors shall notify APP before the Auction whether its bid has been determined to be a Qualified Bid.  The Stalking Horse Buyer is a Qualified Bidder and the Stalking Horse Agreement constitutes a Qualified Bid for all purposes.

Under no circumstances will the Stalking Horse Buyer be permitted to review any bids of APP, or any information regarding APP, except for the Auction Baseline Bid (as defined below) and the terms of any Overbid (as defined below) made at the Auction.

(e)    Modifications of Bids Prior to Auction

Prior to the Bid Deadline, the Debtors (in consultation with the Creditor Constituencies) may discuss, negotiate, or seek clarification of any bid or written offer from APP.  Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period of time such Qualified Bid remains binding as specified herein.  For the avoidance of doubt, any Qualified Bid (including the Stalking Horse Agreement) may be improved at or prior to the Auction as set forth herein.

(f)    Auction Baseline Bid / No Qualified Bids

On or prior to 5:00 p.m. (prevailing Central Time) one (1) business day before the Auction, the Debtors shall provide each of the Stalking Horse Buyer and APP with notice of whether APP submitted a Qualified Bid (as determined in consultation with the Creditor Constituencies) and which Qualified Bid shall serve as the opening bid at the Auction (such Qualified Bid, the "Auction Baseline Bid").  If no Qualified Bid is submitted by APP prior to the Bid Deadline, the Debtors shall not hold an Auction.

(g)    Auction

In the event that APP submits a Qualified Bid, the Debtors are authorized to conduct an Auction.  Other than as expressly set forth herein, the Debtors may conduct an Auction in the manner they determine, in consultation with the Creditor Constituencies, will result in the highest or otherwise best offer for the Assets.  The Auction shall be held on February 8, 2017 at 10:00 a.m. (prevailing Central Time), at the offices of Latham & Watkins LLP, 811 Main Street, Suite 3700, Houston, TX 77002, or such other location as shall be timely communicated to all entities entitled to attend the Auction.  Only the Debtors, the Creditor Constituencies, the

6

Stalking Horse Buyer, and APP and their respective advisors shall be permitted to attend the Auction.

An "Overbid" is any Qualified Bid made by a Qualified Bidder at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid.  To submit an Overbid at the Auction, a Qualified Bidder must comply with the following conditions:

(a)     any Overbid shall be made in increments valued at not less than $200,000 greater than the Auction Baseline Bid or then highest or otherwise best Overbid, as applicable.  Any Overbid may include (i) cash and/or (ii) non-cash consideration acceptable to the Debtors;

(b)     the Stalking Horse Buyer (or its designee) shall be permitted to bid at the Auction;

(c)     any Overbid shall remain open and binding on the Qualified Bidder until and unless (a) the Debtors accept as an Overbid a higher Qualified Bid for the Assets subject to such Overbid and (b) such Overbid is not selected as the Back-Up Bid (as defined below) for the Assets subject to such Overbid;

(d)     to the extent not previously provided, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence demonstrating such Qualified Bidder's ability to close the transactions proposed by such Overbid; and

(e)     the Debtors reserve the right, in their reasonable business judgment and in consultation with the Creditor Constituencies, to make one or more continuances of the Auction to, among other things: facilitate discussions among the Debtors, the Creditor Constituencies, and Qualified Bidders; allow Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors and the Creditor Constituencies with such additional evidence, as the Debtors, in their reasonable business judgment, may require, that such Qualified Bidders have sufficient internal resources, or have received sufficient unconditional debt or equity funding commitments from a recognized financial institution, to consummate the proposed Bidder Agreement at the prevailing Overbid amount and upon the terms of such Overbid.

In addition to complying with the above requirements, the Auction shall be governed by the following procedures:

1.     the Auction will be conducted openly by the Debtors, and only the Qualified Bidders and their advisors shall be entitled to: (i) make any subsequent bids at the Auction; (ii) make statements on the record at the

7

Auction; or (iii) otherwise participate at the Auction in any manner whatsoever; *provided, however*, the Creditor Constituencies shall be permitted to attend and participate in the Auction as set forth herein;

2. each Qualified Bidder shall be required to represent that it has not engaged in any collusion with respect to the bidding or the sale, though Qualified Bidders are permitted to make joint bids as permitted by the Debtors;

3. the Qualified Bidders must appear in person at the Auction, through a duly authorized representative, or as otherwise agreed;

4. bidding shall commence and proceed as determined by the Debtors;

5. bidding at the Auction shall be transcribed or videotaped, at the Debtors' election;

6. all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Stalking Horse Agreement or the Bidder Agreement, as applicable, at the Auction; *provided* that any such modifications to the Stalking Horse Agreement or Bidder Agreement, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors and the bankruptcy estates than such Qualified Bidder's previous bid in the Debtors' discretion, in consultation with the Creditor Constituencies;

7. in each round of bidding, the Stalking Horse Buyer shall have the right to submit a credit bid up to the full amount of (i) the Break-up Fee and (ii) the Expense Reimbursement;

8. the Auction shall continue until the Debtors determine that a Qualified Bid or Overbid, as applicable, is the highest or otherwise best offer from among the Qualified Bids (including Overbids and the bid of the Stalking Horse Buyer or its designee) (the "Prevailing Bid," and the party or parties that submitted such Prevailing Bid, the "Prevailing Purchaser"), which shall be subject to Bankruptcy Court approval;

9. in selecting the Prevailing Bid, the Debtors may consider all factors, including the amount of the purchase price, the form and total amount of consideration being offered, the likelihood of each bidder's ability to close a transaction and the timing thereof, the form and substance of the purchase agreement requested by each bidder, and the net benefit to the Debtors' estates; and

10. unless otherwise consented to by the Prevailing Purchaser, or such other Prevailing Purchaser, the Debtors shall not consider any bids submitted

8

after the conclusion of the Auction, and any and all such bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(h)     Sale Hearing

The Prevailing Bid will be subject to approval by the Bankruptcy Court. The hearing to approve the sale of the Assets to the Prevailing Purchaser (the "Sale Hearing") is scheduled to take place on **February 10, 2017 at 9:00 a.m. (prevailing Central Time)** before the Honorable Marvin Isgur at the United States Bankruptcy Court for the Southern District of Texas at 515 Rusk Street, Courtroom 404, Houston, Texas 77002, or at such times thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time by the Debtors but without further notice to any other party in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or a notice filed with the Bankruptcy Court.

(i)     Failure To Consummate Purchase by the Prevailing Purchaser

If an Auction is conducted and APP is not the Prevailing Purchaser, the Qualified Bid submitted by APP that is next highest or otherwise best to the Prevailing Bid at the Auction, as determined by the Debtors, shall be deemed the back-up bid (the "Back-up Bid") and APP shall be required to serve as a back-up bidder (the "Back-Up Bidder"). APP shall be required to keep the Back-Up Bid open and irrevocable until 11:59 p.m. (prevailing Central Time) on the date that is the earliest of (a) sixty (60) days after the date of the Sale Hearing, (b) the date on which the Debtors, in consultation with the Creditor Constituencies, notify the Back-Up Bidder in writing that it is no longer required to serve as the Back-Up Bidder, and (c) the closing of the sale transaction with the Prevailing Purchaser. For the avoidance of doubt, in no event shall the Stalking Horse Buyer be required to serve as a Back-Up Bidder.

Following the Sale Hearing, if the Prevailing Purchaser is the Stalking Horse Buyer and fails to consummate a sale in accordance with the Prevailing Bid because of a breach or failure to perform on the part of such Prevailing Purchaser, the Debtors are authorized to deem the Back-Up Bidder to be the new "Prevailing Purchaser," and the Debtors will be authorized, but not required, to consummate a sale with the Back-Up Bidder as contemplated by the Back-Up Bid without further order of the Bankruptcy Court. In such case, (a) the defaulting Prevailing Purchaser's deposit, if any, shall be forfeited to the Debtors, and (b) all parties in interest, and the Debtors specifically, reserve the right to seek all available damages from the defaulting Prevailing Purchaser.

Except as otherwise provided herein, all deposits shall be returned to each bidder not selected by the Debtors as the Prevailing Purchaser or the Back-Up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction. The deposit of the Back-Up Bidder shall be held by the Debtors until the earliest of two (2) business days after (a) sixty (60) days after the date of the Sale Hearing, (b) the date on which the Debtors, in consultation with the Creditor Constituencies, notify the Back-Up Bidder in writing that it is no longer required to

9

serve as the Back-Up Bidder, and (c) the closing of the sale transaction with the Prevailing Purchaser.  Notwithstanding the foregoing, the return of the deposit of the Stalking Horse Buyer and any remedies with respect to the Stalking Horse Buyer shall be governed by the terms of the Stalking Horse Agreement.

      (j)    <u>Status of Stalking Horse Agreement</u>

Notwithstanding anything in these Bidding Procedures to the contrary, the Stalking Horse Agreement and related transaction documents (including, without limitation, as modified by any Overbid) shall remain in full force and effect until such agreements have terminated in accordance with their respective terms.

      (k)    <u>Consultation Rights</u>

Except as otherwise provided herein, the Debtors and their advisors shall (i) consult with the Creditor Constituencies and their advisors on all material aspects of the sale process described in these Bidding Procedures and all material decisions and documents contemplated herein and (ii) respond promptly to reasonable requests of the Creditor Constituencies and their advisors for information and/or documents relating to the sale process, the Stalking Horse Buyer, Qualified Bids, the Auction, and the Sale Hearing.

Notwithstanding anything herein to the contrary and for the avoidance of doubt, (i) the Debtors shall not be required to consult with the Stalking Horse Buyer with respect to the determination of what constitutes a Qualified Bid, and (ii) the Debtors shall have the sole and exclusive right to determine the highest or otherwise best bid, subject to the rights of the Creditor Constituencies or any other party in interest to object at the Sale Hearing.

      (l)    <u>Reservation of Rights; Consent to Jurisdiction</u>

The Debtors reserve their rights, in the exercise of their fiduciary obligations, (a) to modify the Bidding Procedures or impose, at or prior to the Auction, different and/or additional terms and conditions on the sale of the Assets and (b) to announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided* that, in the case of both (a) and (b), such modifications or rules (i) are not inconsistent in any material respect with, and do not violate, the Bidding Procedures or the Stalking Horse Agreement and (ii) do not impair or modify the Stalking Horse Buyer's rights and obligations hereunder or under the Stalking Horse Agreement (unless the Stalking Horse Buyer provides written consent to such modifications or rules); *provided further*, that the Debtors may not waive or modify the terms of these Bidding Procedures without the prior consent of the Stalking Horse Buyer (which consent shall not be unreasonably withheld, conditioned, or delayed), the Consenting Holders (which consent shall not be unreasonably withheld, conditioned, or delayed) or the Consenting Banks (which consent shall not be unreasonably withheld, conditioned, or delayed).

10

The Stalking Horse Buyer and APP, to the extent it submits a bid (whether or not constituting a Qualified Bid), shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Bidding Procedures, the Stalking Horse Agreement, or the Auction, and have waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Stalking Horse Agreement, the Auction, or the construction and enforcement of the Stalking Horse Agreement or any Bidder Agreement.

11

## **Annex 2**

Notice of Sale Hearing

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **Chapter 11** |
| | § | |
| **STONE ENERGY CORPORATION**, *et al.*,[1] | § | **CASE NO. 16-36390 (MI)** |
| | § | |
| Debtors. | § | **(Jointly Administered)** |

### NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE HEARING, AND OBJECTION DEADLINE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On December 14, 2016, Stone Energy Corporation ("Stone") and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 Cases (each a "Debtor," and collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") their motion (the "Motion")[2] for entry of an order (I) (a) authorizing the Debtors to assume the Purchase and Sale Agreement, dated October 20, 2016 (the "PSA"), by and between Stone and TH Exploration III, LLC (the "Buyer" or the "Stalking Horse Bidder"), pursuant to which the Debtors will sell substantially all of their oil and gas leasehold interests in the Appalachia basin and certain other assets, including without limitation, the oil, gas and/or mineral leases of the Debtors located in Marshall, Wetzel, Tyler, Marion, Monongalia, Gilmer and Ritchie Counties, West Virginia and Clarion, Susquehanna and Wayne Counties, Pennsylvania as more specifically described and set forth in the PSA (collectively, the "Appalachia Assets") upon entry of the Sale Order (as defined below), (b) approving the Break-up Fee and the Expense Reimbursement, (c) approving the form and manner of notice of the Sale Hearing (as defined below) and Contract Assumption Procedures, and (d) solely in the event the Court requires a remarketing process and/or an auction process with respect to the sale of the Appalachia Assets (a "Remarketing/Auction"), authorizing and approving (1) the assumed PSA as the Stalking Horse Bid and (2) bidding procedures in connection with the sale of the Appalachia Assets; and (II) following the conclusion of the Sale Hearing, an order authorizing (1) the sale of the Appalachia Assets free and clear of all claims, liens, liabilities, rights, interests and encumbrances except for Permitted Title Encumbrances (as defined in the PSA), (2) the Debtors to assume and assign certain executory contracts and unexpired leases, and (3) related relief (the "Sale Order").

---

[1] The Debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, are: Stone Energy Corporation (5413); Stone Energy Holding, L.L.C. (3151); and Stone Energy Offshore, L.L.C. (8062).  The above-captioned Debtors' mailing address is 625 E. Kaliste Saloom Road, Lafayette, Louisiana 70508.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion. Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

2.      On January [13], 2017, the Bankruptcy Court entered the *Order Approving and Authorizing (A) Assumption of Purchase and Sale Agreement, (B) Break-Up Fee And Expense Reimbursement, (C) Form and Manner of Notice of the Sale Hearing and Assumption Procedures, (D) The Purchase and Sale Agreement as the Stalking Horse Bid, (E) Bidding Procedures, and (F) Related Relief* [Docket No. ___] (the "Bidding Procedures Order"). Pursuant to the Bidding Procedures Order, in the event that the Debtors timely receive a Qualified Bid for the Appalachia Assets from American Petroleum Partners or any affiliate thereof or any entity controlled thereby ("APP"), the Auction shall be held at the offices of Latham & Watkins LLP, 811 Main Street, Suite 3700, Houston, Texas 77002, on February 8, 2017 at 10:00 a.m. (prevailing Central Time).  Only the Buyer and APP shall be entitled to make any bids.  If APP desires to make a bid, it shall deliver a written or electronic copy of its bid to the parties identified in the Bidding Procedures so as to be received on or before **February 6, 2017 at 6:00 p.m. (prevailing Central Time)** (the "Bid Deadline") and otherwise comply with the Bidding Procedures.  **FAILURE TO ABIDE BY THE BIDDING PROCEDURES MAY RESULT IN A BID FOR THE APPALACHIA ASSETS TO NOT BE CONSIDERED.**

3.      If no timely Qualified Bid by APP is submitted on or before the Bid Deadline, the Debtors will not hold an Auction and will request at the Sale Hearing that the Court approve the PSA and the transactions contemplated thereunder and enter the Sale Order.

4.      The Prevailing Bid will be subject to Bankruptcy Court approval.  The hearing (the "Sale Hearing") to approve the Sale to the Prevailing Purchaser, free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the Sale with the same rights and priorities therein as in the sold assets), shall take place **on February 10, 2017 at 9:00 a.m. (prevailing Central Time)**, before the Honorable Marvin Isgur, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas, at 515 Rusk Street, Courtroom 404, Houston, Texas 77002.  The Debtors may, after consultation with counsel for the Consenting Holders and the counsel for the Bank Agent, designate the Back-Up Bid (and the corresponding Back-Up Bidder) to purchase the Appalachia Assets, without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties, in the event that the Buyer does not close the Sale.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' Chapter 11 Cases.

5.      **Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection") must: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) set forth the specific basis for the Sale Objection; and (d) be filed with the Clerk of the Bankruptcy Court, at 515 Rusk Street, Houston, Texas 77002, together with proof of service, on or before 5:00 p.m. (prevailing Central Time) on January 30, 2017 (the "Sale Objection Deadline").  If a Sale Objection is not filed and served in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and the Bankruptcy Court may enter the Sale Order without further notice to such party.**

6.      Copies of the Motion, the Bidding Procedures, the Bidding Procedures Order, and the PSA may be obtained by parties in interest free of charge (i) on Epiq Bankruptcy Solutions, LLC's dedicated webpage related to these Chapter 11 Cases (http://dm.epiq11.com/StoneEnergy) and (ii) by request to the Debtors' proposed counsel, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 (Attn: Caroline A. Reckler, Esq. and Matthew L. Warren, Esq.), Caroline.Reckler@lw.com and Matthew.Warren@lw.com.  Copies of such documents are also available for inspection during regular business hours at the Clerk of the Bankruptcy Court, 515 Rusk Street, Houston, Texas 77002, and may be viewed at the Bankruptcy Court's website (http://www.txs.uscourts.gov) by following the directions for accessing the ECF system on such website.

Dated: _____, 2017             Respectfully,
       Houston, Texas

_____

John F. Higgins (TX Bar No. 09597500)
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
Brandon J. Tittle (TX Bar No. 24090436)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:  (713) 226-6000
Facsimile:  (713) 226-6295
Email: jhiggins@porterhedges.com
       jwolfshohl@porterhedges.com
       apower@porterhedges.com
       btittle@porterhedges.com

- and -

Michael E. Dillard (TX Bar No. 05866000)
**LATHAM & WATKINS LLP**
811 Main Street, Suite 3700
Houston, TX 77002
Telephone:  (713) 546-7414
Facsimile:  (713) 546-5401
Email: michael.dillard@lw.com

- and -

David S. Heller (admitted *pro hac vice*)
Josef S. Athanas (admitted *pro hac vice*)
Caroline A. Reckler (admitted *pro hac vice*)
Matthew L. Warren (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9667
Email: david.heller@lw.com
       josef.athanas@lw.com
       caroline.reckler@lw.com
       matthew.warren@lw.com

*Counsel for the Debtors and Debtors in Possession*